This is an appeal of the trial court's judgment granting directed verdicts in favor of Alabama Power Company, and its Workmen's Compensation carrier, United States Fidelity and Guaranty Company.
James Hughes was an employee of Daniel Construction Company (Daniel), which was building the Farley Nuclear Power Plant in Houston County. He was working on a scaffold when he slipped on debris scattered about the work area, and injured his back. He eventually had surgery to remove a ruptured disc.
Hughes claimed: (1) that the contract between Alabama Power and Daniel was worded in such a manner that Alabama Power was, in fact and in law, the prime contractor of the construction project and Daniel was a subcontractor; therefore, Alabama Power had a duty to provide him, as one of Daniel's employees, with a safe place to work, the negligent breach of which caused his injury; and (2) that USFG had undertaken to inspect the construction area and to provide safety engineering services, but that it had failed to inspect, report on, or render in a safe condition the lights or scaffold on which he was working and that he was injured as a result of that negligence.
Directed verdicts were granted to both Alabama Power and USF G.
 I
As previously indicated, Hughes claimed that Alabama Power was the prime contractor *Page 1386 
on the project, not just the owner. He argues, therefore, that the duty Alabama Power owed was the duty of providing the employees of its subcontractors a safe place to work.
The issue here then is whether Alabama Power and Daniel were in an owner-independent contractor relationship or in a prime contractor-subcontractor relationship.
This Court has recognized that:
 "`It is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee — master and servant. Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757.' Solmica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638
(1970)." Hodges Company v. Albrecht, 288 Ala. 281, 259 So.2d 829 (1972).
The question for the trial court was whether Alabama Power retained the right to direct the manner in which Daniel performed its construction work. Solmica of Gulf Coast, Inc. v.Braggs, 285 Ala. 396, 232 So.2d 638 (1970).
Hughes argues that he presented at least a scintilla of evidence that Alabama Power did, in fact retain the right to control Daniel. In order to determine whether a jury issue was made as to the relationship between the parties, we have examined the record, and we conclude that there was not a scintilla of evidence that Alabama Power exercised any authority or control over the work performed by Daniel. Hughes contends that the contract between Alabama Power and Daniel itself shows the retained right of control. We disagree. The contract terms do not show the existence of any relationship other than that of owner and independent contractor. This Court has often stated that when the terms of a contract are clear and unambiguous, it is incumbent upon the trial court to analyze and determine the force and effect of those terms, as a matter of law. Johnson-Rast Hays, Inc. v. Cole, 294 Ala. 32,310 So.2d 885 (1975); Metzger Bros., Inc. v. Friedman, 288 Ala. 386, 261 So.2d 398 (1971).
Alabama Power, as the owner of the premises, was charged with certain duties under the contract. These duties have been discussed recently in Chrysler Corporation v. Wells,358 So.2d 426 (Ala. 1978). Quoting the well-established rule, this Court stated:
 "`The owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury. Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474. . . .' (Emphasis supplied). ([Veal v. Phillips] 285 Ala. [655] at 656, 235 So.2d [799] at 802)."
Applying this test, we conclude that Hughes failed to provide a scintilla of evidence to show that Alabama Power breached a duty owed to him because the undisputed evidence is that Hughes was an employee of Daniel, who we have determined, under the evidence, was the prime contractor. Hughes was working upon scaffolding supplied and erected by Daniel and engaged in a project supervised by Daniel. It is clear from Hughes' own testimony that he knew about the debris at his feet. It had been left there by the previous shift. The owner of premises owes no duty of care to the employees of an independent contractor with respect to conditions arising in the progress of the work on the contract. United States Cast Iron Pipe andFoundry Co. v. Fuller, 212 Ala. 177, 102 So. 25 (1924).
Hughes claims that his theory of recovery is supported byAlabama Power Co. v. Henderson, 342 So.2d 323 (Ala. 1976). We do not agree. There, the evidence showed that Alabama Power, as owner of the premises, retained active control over the manner in which the work was to be performed by the independent contractor. The facts here are *Page 1387 
different. There is no evidence that Alabama Power exercised control over the performance of the work by Daniel in this case.
Having found that the plaintiff failed to present evidence establishing a duty owed by Alabama Power Company, we conclude that the trial court was correct in granting Alabama Power's motion for a directed verdict.
 II
USFG, as the Workmen's Compensation carrier for Daniel, had the right to inspect the construction site and facilities for hazardous conditions in an effort to reduce compensation claims. It is clear from the evidence that USFG had made inspections on a regular monthly basis for several years prior to the subject accident. It also appears that the scaffold area was periodically inspected.
In his complaint, Hughes alleged that USFG had undertaken to inspect the project and provide safety engineering services but that USFG had "negligently failed to perform said safety engineering service properly, and that said defendant's said employee or employees knew of the unsafe or dangerous condition of said scaffold and the dangerous conditions occasioned by non-sufficient light, and negligently failed to render said scaffold and lights upon which plaintiff was invited to work in a reasonably safe condition."
This case is governed by the most recent pronouncements of this Court on the issue of negligent inspection by Workmen's Compensation carriers, United States Fidelity Guaranty v.Jones, 356 So.2d 596 (Ala. 1977).[1]
The issue is whether Hughes presented any evidence at trial that USFG had negligently inspected the construction project.
In a suit of this type the complainant must prove that the defendant had (1) undertaken to inspect the construction site, particularly the area in which the injury-causing hazard is located, (2) performed such inspection negligently, and (3) that such negligence was the proximate cause of his injuries.
It is uncontradicted, as stated above, that USFG conducted periodic inspections of the area in which the accident occurred. The first question then is whether the appellant presented any evidence at trial that USFG had inspected the construction site negligently.
The appellant testified that he slipped upon debris scattered about the scaffold area and that he was aware that it was underfoot. USFG's periodic reports which are included in the record before us show that a "housekeeping" problem existed and that the seriousness of the problem varied from report period to report period. Rebar and piping, which caused appellant's fall, were specifically mentioned in some reports. Copies of these reports were forwarded to the insured, Daniel.
In Jones, supra, this Court stated: "The law, simply stated, is that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care." Although it was not required to, USFG undertook to make inspections of the Farley Nuclear Plant construction site and to report hazardous conditions to the management. The duty it undertook was to inspect and report. There is no evidence that USFG ever had or undertook a duty to correct the safety hazards which it discovered. This Court has never imposed such a duty.
USFG discovered and reported the very hazard which resulted in the Hughes fall. We are of the opinion that Hughes failed to introduce even a scintilla of evidence that he was injured as a result of *Page 1388 
USFG's negligent inspection; therefore, the trial court did not err in granting a directed verdict in favor of USFG.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] The accident here occurred before the adoption of Act No. 86, 4th Ex.Sess. 1975, p. 2729; codified as § 25-5-11, Code 1975; which purports to grant immunity to Workmen's Compensation carriers. We express no opinion here, of course, on the effect of this statute. It is inapplicable here.