This is an appeal of the trial court's granting of defendant's motion for directed verdict at the close of plaintiffs' evidence. Plaintiffs Clyde Pate and William Carvey sued defendant United States Steel Corporation (USS) for personal injuries sustained while employed as carpenters by J.M. Foster, Inc., (Foster) a builder, on a construction project at the plant of defendant. Their wives filed derivative actions for loss of services. Foster was granted a conditional intervention as a party plaintiff to protect its interest as a workmen's compensation carrier.
Both Pate and Carvey were employed to assist in the building of concrete pedestals upon which Q-BOP furnaces were to be *Page 994 
installed in the steel-making facility of USS in Birmingham. Both carpenters had assisted in building cement forms from which one of the pedestals was built. At the time of their injury, they were in the process of wrecking or taking down the forms surrounding the pedestal. Pate was on top of the pedestal some thirty feet above the ground, and Carvey was on a scaffold some six feet below him. The scaffolding had no back rests or safety lines, and both men were aware of this unsafe condition; complaints had been made to Foster. In Pate's attempt to wreck a form, it came loose, causing Pate to fall, striking Carvey and knocking both men to the ground. Each suffered serious injuries, including open depressed skull fractures.
Plaintiffs alleged in their complaint that defendant negligently failed to provide a safe place to work, i.e., adequate and safe scaffolding and personal protective devices, such as safety lines or nets. Their principal theory of recovery relies on a duty of care owed by USS arising out of an alleged prime contractor-subcontractor relationship with Foster. A prime contractor has the duty of providing the employees of its subcontractors a safe place to work.
Generally, the owner of premises, such as USS, owes no duty to the employees of an independent contractor with respect to conditions arising in the progress of work on the contract.Hughes v. Hughes, 367 So.2d 1384 (Ala. 1979). The test for whether such an owner will be viewed as a prime contractor is whether the owner reserved the right of control over the contractor's work. Hughes. Although actual exercise of control is not required, it is indicative of what control has been reserved.
More specifically, the issue presented here is whether USS retained the right to direct the manner in which Foster performed its work. Solmica of the Gulf Coast, Inc. v. Braggs,285 Ala. 396, 232 So.2d 638 (1970). The trial court found no evidence of such control and directed a verdict for USS on the authority of Hughes v. Hughes. We affirm.
Quoting Birmingham Post Company v. Sturgeon, 227 Ala. 162,149 So. 74 (1933), this Court recently observed:
 It is not possible to lay down a hard and fast rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative, but all must be considered together.
Burbic Contracting Company v. Willis, 386 So.2d 419 (Ala. 1980).
The contractual relationship of USS and Foster must be determined from the written contract and the actions of the parties pursuant thereto. The contract in this case is clear and unambiguous. Its terms do not show the existence of any relationship other than that of owner and independent contractor. Thus, the trial court properly excluded parol evidence as to the effect of the contract. "This Court has often stated that when the terms of a contract are clear and unambiguous, it is incumbent upon the trial court to analyze and determine the force and effect of those terms, as a matter of law." Hughes v. Hughes, 367 So.2d at 1386.
Furthermore, the contract clearly places the responsibility for the safety of employees at the work site on the contractor, Foster:
 The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor. . . .
 Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. . . .
 It is understood that if employees of Owner shall perform any acts for the purpose of discharging the responsibility undertaken by the Contractor in this Article 16, whether requested to perform such acts by the Contractor or not, such *Page 995 
employees of the Owner while performing such acts shall be considered the agents and servants of the Contractor subject to the exclusive control of the Contractor.
Appellants claim that the actions of USS at the work site indicate its reserved right of control over the manner of performing the work, citing Alabama Power Co. v. Henderson,342 So.2d 323 (Ala. 1976). We disagree. In Henderson, Alabama Power contracted with Custodis Construction Company for the construction of a concrete smoke stack on its premises. An improper mixture of the concrete caused one of the forms to buckle, pouring concrete on an employee below. Finding the evidence tended to show Alabama Power's control and supervision over the construction of the stack, this Court relied on the circumstance that Alabama Power "maintained employees at the concrete mixing plant to continuously check the mixture for suitability for use on this particular job; also maintained an employee at the construction site who supervised the pouring of the concrete at all times, and periodically checked the concrete for rate of hardening." Henderson, at 325.
In the instant case, USS had nothing to do with the construction of the scaffolding from which plaintiffs fell. Foster provided its own materials for building the scaffolding and directed the manner of its construction. Unlike Henderson, there was no control of the particular activity which led to the injuries, i.e., the construction and maintenance of the scaffolding.
Appellants further argue that USS retained control of the construction activity as a whole, citing the following facts. USS maintained a team of engineers that daily visited the work site with blueprints and specifications in hand to point out deviations from the contract and have them corrected. Several contractors, including Foster, had been hired by USS to build the furnace; and, instead of hiring a construction manager, USS did that job itself. Consequently, USS engineers held weekly meetings with the contractors to review progress, plan work and coordinate the construction.
None of these activities of USS indicates its control over the manner of constructing the furnace, as contemplated inHenderson. USS's actions merely indicate its concern that the results contemplated by the contract were achieved. This is a legitimate concern of the owner. In an analogous case, this Court noted, "The `superintendence' provided for in the contract with Drew Davis and exercised (if so) by the defendant was alone referable to the guarding of the interest of the owner to see that the `independent contractor' did the work as the contract required." Looker v. Gulf Coast Fair,203 Ala. 42, 44, 81 So. 832 (1919). The complexity and size of the construction work in this case and the elaborate means available to this owner to ensure compliance with the contract do not alter the general rule, viz.:
 The mere retention by the owner of the right to supervise or inspect work of an independent contractor as it progresses, for the purpose of determining whether it is completed according to plans and specifications, does not operate to create the relation of master and servant between the owner and those engaged in the work. This rule is not altered by the fact that the employer may stop work which is not properly done.
41 Am.Jur.2d Independent Contractor § 10 (1968) (footnotes omitted).
Appellants argue a second theory of recovery based on USS's alleged undertaking to inspect the premises for safety and doing it negligently, citing several cases recognizing this tort of negligent inspection. Hughes v. Hughes, 367 So.2d 1384
(Ala. 1979), and United States Fidelity and Guaranty Co. v.Jones, 356 So.2d 596 (Ala. 1977). In Hughes, 367 So.2d at 1387, this Court stated, "In a suit of this type the complainant mustprove that the defendant had (1) undertaken to inspect theconstruction site, particularly the area in which theinjury-causing hazard is located, (2) performed such inspection negligently, and (3) that such negligence was the proximate cause of his injuries." (Emphasis added.) *Page 996 
By their own concession, appellants are barred from recovering on this theory; they recognize the trial court's finding that USS made no safety inspections of the work site. Without an undertaking to inspect, no duty arises. The trial court properly acknowledged this in its granting of directed verdict to USS.
However, appellants argue on appeal that USS was negligent in its failure to inspect for safety in the first place. No authority is cited for this unique proposition. Yet, appellants argue that several factors in the instant case support such a theory. The contract and specifications required Foster to comply with the applicable safety regulations and a safety manual provided by USS. The contract allowed USS to make inspections to ensure compliance with the contract and its specifications. USS engineers testified that, if they saw an unsafe condition, they would point it out to Foster, which was part of their duties under the contract. Such evidence merely indicates that USS had the right, not the duty, to inspect the premises to ensure that Foster complied with its duties under the contract, including work safety. Without an undertaking to inspect for safety, this does not alter the relationship of owner-independent contractor. See Ex parte Board of SchoolCom'rs, 235 Ala. 82, 178 So. 63 (1937).
Having found that appellants failed to present evidence establishing a duty owed by USS, we conclude that the trial court was correct in granting USS's motion for a directed verdict.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and EMBRY, JJ., concur.