409 So.2d 760 (1981)
ALABAMA POWER COMPANY
v.
Walter Lee SMITH and Mary Ruth Smith.
80-222.
Supreme Court of Alabama.
October 2, 1981.
Rehearing Denied February 5, 1982.
C. William Gladden, Jr. and James A. Bradford of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, for appellant.
Stephen D. Heninger and Alex W. Newton of Hare, Wynn, Newell & Newton, Birmingham, for appellees.
ADAMS, Justice.
This is a premises liability case. Plaintiffs Walter Lee Smith (Smith) and his *761 wife, Mary Ruth Smith, complain that the defendant negligently operated its scales so that they were not reasonably safe for plaintiff Smith to perform his duties in and about the delivery of coal to and from defendant Alabama Power Company's Gorgas Transloader. It is not clear whether plaintiff Smith was an employee of Osborne Truck Lines or of Sand-T Corporation, but it is clear that he was not an employee of the Alabama Power Company. Smith was paid a percentage for the coal he hauled.
At the time of Smith's accident on October 11, 1976, there were four independent trucking companies hauling coal to Alabama Power Company's Gorgas Transloader. In order to determine the amount of coal delivered on each trip, all trucks were weighed loaded (heavy weight), and empty (light weight).
The procedure used by all truck drivers was as follows. Each truck driver would drive his loaded truck up a ramp to a weighing platform which also was called scales. Adjacent to this platform was a small weighing shed which contained a mechanism whereby Alabama Power Company's employee could take a reading of the heavy weight, as well as the light weight. The employee would then enter the figures on a slip of paper which was made available to the truck driver. This mechanism, too, was called scales. It took about a minute to make the weight calculation. The truck driver remained in the cab of his truck on each occasion when weighing took place. When the truck driver was on the weighing platform with his heavy weight, his driver's side was in close proximity to the weighing shed and he could see the Alabama Power Company employee when the employee waved him to move on, indicating that he had obtained a reading on his scales inside the shed.
Drivers who testified as witnesses said that after the coal had been dumped, and they returned to the platform to obtain a light weight reading, they could not see Alabama Power Company's employee in the shed if he motioned for them to drive away. Therefore, they claimed they had to get out of the cab of the truck, walk along a narrow six to eight inches of slippery weighing platform which extended beyond the tandem wheels of the truck, crawl under the truck, and then get the weight slip from the Alabama Power Company employee.
On October 11, 1976, Smith had dumped his load, and in the process of getting out of his truck to get his weight ticket, put his foot on the narrow edge of the platform scales, slipped, did the splits and fell in a mudhole four feet below. Smith suffered muscle spasms and a ruptured disc which required surgery. Although he was discharged from the hospital on December 13, 1976, "doing extremely well," Smith complained to the doctor on four occasions through March 22, 1977. It was at this time that the doctor recommended Smith receive psychological help for his "historical conversion," meaning that Smith was complaining of pain that was neurologically impossible and which was a product of his mental attitude.
Smith testified that he could get his weight ticket in any manner he wanted to and that the decision about getting out of the truck and going under the trailer was his own. He further testified that he could have pulled his truck off the platform and walked back to get his ticket. Plaintiff's witness, Robert Hudson, also testified that no one from Alabama Power Company ever told truck drivers how to get out of their trucks, or to walk under their trailers to get the light weight ticket. He said that Smith had driven over the area hundreds of times before the date of the accident.
It appears that the slippery condition of the platform on which plaintiff slipped was caused by the accumulation of wet mud on the platform surface. The road approaching the weighing shed and the road to the Gorgas Transloader is a dirt road. Because of the large amount of dust raised by the many trucks traveling this dirt road, Dennis Parsons, an employee of Sand-T Corporation, frequently drove a water truck up and down the road, wetting it. Some of this wet dirt was transported to the platform surface by the wheels of the trucks.
*762 Although Alabama Power Company owned the land on which the scale platform was built, Mr. Douglas, a witness for the power company, stated in succinct terms the extent of Alabama Power Company's involvement in the condition that gave rise to Smith's injury. Mr. Douglas said, "They [Sand-T] were awarded a contract to haul coal, to build a road, maintain the road and put in scales and maintain the scales." Yet, on the basis of essentially the same facts stated above, a jury awarded plaintiff Smith the sum of $200,000.00 for his injuries and his wife $25,000.00 for loss of services. Alabama Power Company properly preserved error by filing motions for directed verdict, JNOV, or in the alternative for a new trial, all of which were denied by the Circuit Court.
Although appellant and appellees raise many issues on this appeal, we believe the following issue is dispositive of this litigation. In the context of the facts of this case, did Alabama Power Company control the manner in which truck drivers loaded and unloaded their trucks so as to constitute a breach of duty owing by it to the plaintiff? We believe that, at best, the control exercised by Alabama Power was tangential and we reverse.
Both sides of this controversy have been represented by able counsel. Both sides agree, and this litigation was tried below, on the single issue of control vel non on the part of Alabama Power Company. We have been given excellent briefs by both sides. Now we must apply the law to the facts of the case. We believe our recent decision in Pate v. United States Steel Corporation, 393 So.2d 992 (Ala.1981), which applied the principles set forth in Hughes v. Hughes, 367 So.2d 1384 (Ala.1979), and Alabama Power Company v. Henderson, 342 So.2d 323 (Ala.1976), and our recent decision in Thompson v. City of Bayou La Batre, 399 So.2d 292 (Ala.1981), control the outcome of this litigation.
In Pate v. United States Steel Corporation, supra, we observed:
In the instant case, USS had nothing to do with the construction of the scaffolding from which plaintiffs fell. Foster provided its own materials for building the scaffolding and directed the manner of its construction. Unlike Henderson, there was no control of the particular activity which led to the injuries, i.e., the construction and maintenance of the scaffolding.
Pate, at 995.
In the instant case, Mr. Allred was the closest Alabama Power Company employee to the place where plaintiff was injured. He was the weighman in the weighing shed. All other Alabama Power Company employees were over a quarter of a mile away. Our careful review of the record compels us to agree with Alabama Power Company that the following statements are undisputed:
1. Alabama Power Company did not own the weighing platform or scale mechanism;
2. It did not build the foundation for the platform;
3. It did not install the platform or scale mechanism;
4. It did not repair or maintain the platform or scale mechanism at any time;
5. It did not specify the width of the platform or the coal trucks themselves;
6. It did not instruct the coal truck drivers how to drive or park their trucks or how to get out of their trucks or how to pick up their weight tickets;
7. Sand-T Corporation, the employer of the coal truck drivers, had an employee at the site, Dennis Parsons, who was responsible for the coal trucks, instructing the drivers how to drive onto the weighing platform, and who operated a water truck on the approach road;
8. Sand-T Corporation, not Alabama Power Company, was responsible for having the scales certified;
9. A driver's platform erected and installed after the plaintiff's accident was built by some person or corporation other than Alabama Power Company.
*763 In spite of this overwhelming lack of evidence of the control of the manner of operation, plaintiffs say that interrogatory 4, asking who was in charge or control of the operation of said scale, and Alabama Power Company's answer "Alabama Power Company," provide a scintilla to support the verdict. This they say was enough to allow them to survive motions for directed verdict and JNOV. Orton v. Liberty National Life Insurance Company, 402 So. 2d 978 (Ala. 1981); Day v. Friedman & Company, 395 So.2d 54 (Ala.1981). The word "scales" in this case has been used in connection with the weighing platform, as well as the scales read by Alabama Power Company's employee in the weighing shack. In the face of the strong cumulative evidence that Alabama Power Company did not exercise control over the platform, we conclude that no reasonable person could place any meaning on this answer but that Alabama Power Company was referring to the scales inside the weighing shack. Although we have the scintilla rule in Alabama, this court has also consistently held that the scintilla doctrine does not vitiate the rule that a conclusion based on speculation or conjecture as to liability is not a proper basis for a verdict. Matthews v. Mountain Lodge Apartments, Inc., 388 So.2d 935, at 939 (Ala.1981). See also Perdue v. Gates, 403 So.2d 165 (Ala.1981).[1]
Plaintiffs also contend that Alabama Power Company was pursuing a policy of requiring the truck drivers to stay on the scales until they got the heavy weight, as well as the light weight. Therefore, there was a scintilla of evidence to support the jury award, insulating it from destruction by this court. As much as we hold jury verdicts sacrosanct, and as much as we sympathize with the plaintiffs in this cause, our judgment must be based on law. The contention of plaintiffs' counsel flies in the face of plaintiffs' own testimony and that of their principal witness. The testimony of Smith and his principal witness is to the effect that at the very point where he was injured (getting a light weight and attempting to get a weight ticket) Smith could have left the platform and come back and gotten his ticket. If there was any dispute as to whether the light weight had been achieved, Smith could have had his truck re-weighed. There is absolutely no testimony that the power company's employee gave any instructions about how truck drivers should weigh their trucks. He rarely came out of the weight shack. On the other hand, the truck driver's "boss," Dennis Parsons, did give instructions as to how the job was to be performed. Likewise, it was his action in wetting down the dust which caused mud to be deposited on the platform which contributed to Smith's slipping and falling.
Plaintiffs contend that control can be seen in the instant case because Alabama Power Company, at one time, only required truck drivers to get one light weight per day. Sometime prior to Smith's accident, they say, Alabama Power Company required truck drivers to get a light weight after each heavy weight had been dumped. It is this minimal control that plaintiffs contend is sufficient to support the verdicts. If this was control, it was, as we have previously said, tangential, and not sufficient to fasten duty on the part of Alabama Power Company. In Pate v. United States Steel Corporation, supra, USS retained the right to inspect the work of J. M. Foster Company, Inc., as it progressed. In Pate, USS never gave instructions to the independent contractor, although it had reserved the right to inspect the work. Quoting from 41 Am.Jur.2d Independent Contractors § 10, at 756 (1968), we said:

*764 The mere retention by the owner of the right to supervise or inspect work of an independent contractor as it progresses, for the purpose of determining whether it is completed according to plans and specifications, does not operate to create the relation of master and servant between the owner and those engaged in the work. This rule is not altered by the fact that the employer may stop work which is not properly done. [Footnotes omitted.]
Pate, at 995.
We hold, that in this case, as in Pate, plaintiffs must show much more substantial involvement of the landowner in the activity which caused the injuries. The salient question still remains: Did the defendant control the manner of the operation? When the defendant controls the manner of the operation "... the relationship changes from one of premises owner and independent contractor to that of master and servant." Thompson v. City of Bayou La Batre, 399 So.2d at 294. In such a relationship the master must furnish the servant with a reasonably safe place in which to work. Here, although Smith worked for an independent contractor, he also may have been an independent contractor because his pay was based on a percentage of the income derived from the amount of coal delivered to Alabama Power Company.
Liability in a negligence action is predicated on the plaintiff's showing a duty owing to him by the defendant, breach of that duty, and injury flowing to him in the consequence of that breach. Thompson v. City of Bayou La Batre, supra; Elba Wood Products, Inc. v. Brackin, 356 So.2d 119 (Ala.1978); Sammons v. Garner, 284 Ala. 131, 222 So.2d 717 (1969); Tennessee Coal, Iron & R.R. Co. v. Smith, 171 Ala. 251, 55 So. 170 (1911). Plaintiffs having failed to prove the first element in their negligence action, namely, a duty owing, we pretermit discussion of the other issues raised in their brief.
Therefore, for the above reasons, the judgment is due to be, and is hereby reversed and the cause is remanded to the Circuit Court for entry of a judgment in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.

On Application for Rehearing
ADAMS, Justice.
The serious charges alleged by appellants in their application for rehearing have caused us to extensively review our opinion and decision in this case. After careful review of these charges, we are of the opinion that they are without merit.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
TORBERT, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.
NOTES
[1] We overturned a jury verdict awarding plaintiff $80,000.00 as a sales commission where proof of this commission was based on speculation and conjecture and the evidence at trial showed that the defendants had paid another real estate agency $150,000.00 for selling the same property plaintiff contends she had sold. Plaintiff contended that her verdict was strengthened by the fact that the trial court refused to enter a JNOV. We concluded that where there was absolutely no basis to found liability in contract, the trial court erred in failing to grant directed verdict or JNOV.