On June 8, 1977, Appellant Weeks was injured when a scaffold on which he was standing collapsed, causing him to fall to the concrete floor below. Appellant was employed as an electrician by Howard P. Foley Company during the construction of the Tombigbee Power Plant in Leroy, Alabama. Alabama Electric Cooperative, Inc. (AEC) was the owner of the Tombigbee Power Plant. The plans and specifications for the power plant were prepared by Burns McDonnell Engineering Company, Inc. (Burns McDonnell).
Weeks filed suit on April 25, 1978, against AEC as owner of the premises; Specialty Contractors, Inc., as owners of the scaffold; National Union Insurance Co., the workmen's compensation carrier; and several fictitious parties defendant.
AEC filed a third-party complaint on September 19, 1978, alleging that Sullivan, Long Hagerty, Inc. (SLH), as a subcontractor of AEC, agreed to hold AEC harmless for all claims and losses relating to injuries to any person occurring by reason of Sullivan, Long Hagerty's negligence.
On May 24, 1979, Weeks amended his complaint, identifying fictitious party "X" as Burns McDonnell. AEC filed a cross-claim against Burns McDonnell, alleging breach of contract and claiming that Burns McDonnell should indemnify AEC for any damages assessed against AEC caused by the negligence of Burns McDonnell.
Summary judgments were granted in favor of AEC against Weeks; in favor of Burns McDonnell against Weeks; and in favor of Sullivan, Long Hagerty against AEC. Each summary judgment was certified pursuant to Rule 54 (b), Alabama Rules of Civil Procedure. Weeks filed notice of appeal on December 8, 1981. AEC filed notice of appeal on December 16, 1981.
The issues presented on appeal are: *Page 1383 
(1) Whether there are sufficient facts to find that an employer-employee relationship existed between AEC and Weeks, thereby imposing the duty on AEC to provide Weeks with a safe place to work.
(2) Whether the substitution of Burns McDonnell for fictitious party "X" was proper.
(3) In addition, if Weeks's appeal results in reversal of the judgment entered in favor of AEC, the following issue is presented: Whether it was proper for the trial court to dismiss AEC's third-party complaint against SLH.
Appellant contends that there are sufficient facts to find that an employer-employee relationship existed between AEC and Weeks, thereby creating a duty to Weeks by AEC to provide him with a safe place to work.
The principles regarding the legal duty of a premises owner to provide a safe place to work for employees of an independent contractor are well settled. See, e.g., Alabama Power Co. v.Smith, 409 So.2d 760 (Ala. 1981); Thompson v. City of Bayou LaBatre, 399 So.2d 292 (Ala. 1981); Pate v. United States SteelCorp., 393 So.2d 992 (Ala. 1981); Hughes v. Hughes,367 So.2d 1384 (Ala. 1979); Evans v. Kendred, 362 So.2d 206 (Ala. 1978);Chrysler Corp. v. Wells, 358 So.2d 426 (Ala. 1978).
These cases firmly establish the general rule that a premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. "The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work." Thompson v. City ofBayou La Batre, 399 So.2d at 294; Hughes v. Hughes, 367 So.2d at 1386. "When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant." 399 So.2d at 294.
A master-servant relationship is not created, however, when the owner merely retains the right to supervise or inspect work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications, and retains the right to stop work that is not properly done. Pate v. United States States Steel Corp., 393 So.2d at 995.
In face of AEC's proof denying any retained right of control, Weeks, as the non-moving party, must proffer some proof which creates a genuine issue of material fact; that is, he must offer some evidence on the factual issue as to whether AEC retained the right to direct the manner in which Weeks's employer, Howard P. Foley Company, or Specialty Contractors, the owner of the scaffold, performed its work. Any evidence tending to establish that AEC retained this control, either by contract or by its actions, will meet this burden of proof.
Weeks offers the following as evidence of AEC's retention or reservation of control over the manner in which the independent contractors performed their work:
(1) Article III, Section 1, of the contract between Burns 
McDonnell and AEC provides:
 "The Engineer [Burns McDonnell] shall also supervise the manner of the incorporation of the material and equipment in the Project and the workmanship with which such materials shall be incorporated. The Engineer, as representative of the Owner, shall have sole responsibility for requiring the Contractor to perform the Construction Contract in accordance with its terms and the Plans and Specifications; . . ."
(2) Article II, Section 5, of the contract between Sullivan, Long Hagerty and AEC provides that the premises owner, AEC, "shall have the right to change the amounts or kinds of tools and equipment if at any time the progress of the work is unsatisfactory." Paragraph (c) of Section 5 provides that "The manner of construction of the project and all materials and *Page 1384 
equipment used therein shall be subject to the inspection, tests and approval of owner. . . ."
(3) A memorandum by an AEC employee regarding a meeting on July 21, 1977.
(4) The deposition of AEC employee John B. Howard is offered to show that Howard attended a weekly safety meeting held by the various contractors.
After this Court's examination of the contracts, the memorandum and the deposition of John B. Howard, we conclude that there is no evidence to support Weeks's claim of reserved control by AEC over the employees of the various contractors.
First, examining the contract between AEC and Burns 
McDonnell, we quote Article III, Section 1:
 "The Engineer shall supervise all details of the construction of the Project and shall make a diligent effort to insure the expeditious and economical construction thereof in accordance with the Plans and Specifications and the terms of the Construction Contract and equipment or material contracts and the loan contract (hereinafter called the `Loan Contract') entered into between the Owner and the Government or any other lenders specifying the terms upon which the Project shall be constructed and financed. The Engineer shall carefully inspect all materials and equipment prior to their incorporation in the Project and shall promptly reject those not in compliance with the Specifications. The Engineer shall also supervise the manner of the incorporation of the materials and equipment in the Project and the workmanship with which such materials shall be incorporated. The Engineer, as representative of the Owner, shall have sole responsibility for requiring the Contractor to perform the Construction Contract in accordance with its terms and the Plans and Specifications; and, in performing the duties incident to such responsibility, the Engineer shall issue to the Contractor such directives and impose such restrictions as may be required to obtain reasonable and proper compliance by the Contractor with the terms of the Construction Contract and the Plans and Specifications in the construction of the Project; provided that the Engineer shall not be required to exercise any actual control over employees of the Contractor. The obligations of the Engineer hereunder run to and are for the benefit of only the Owner and the Administrator." (Emphasis added.)
The plans and specifications of the power plant were prepared by Burns McDonnell. The contract between AEC and Burns 
McDonnell required Burns McDonnell to ensure that the plant was built according to the plans and specifications, but this responsibility did not include control over the employees of the individual contractors. This contractual provision, as well as the next one, only provides for assurances that the work would be completed according to the plans and specifications of the contract.
Second, Article II, Section 5, paragraphs a, b, and c, of the contract between AEC and Sullivan, Long Hagerty, provides:
 "a. The Bidder will give sufficient supervision to the work, using its best skill and attention. The Bidder will carefully study and compare all drawings, specifications and other instructions and will at once report to the Owner any error, inconsistency or omission which it may discover. The Bidder shall cause the construction work on the Project to receive constant supervision by a competent superintendent (hereinafter called the `Superintendent') who shall be present at all times during working hours where construction is being carried on. The Bidder shall also employ, in connection with the construction of the Project, capable, experienced and reliable foremen and such skilled workmen as may be required for the various classes of work to be performed. Directions and instructions given to the Superintendent shall be binding upon the Bidder.
 "b. The Owner reserves the right to require the removal from the Project of any employee of the Bidder if in the judgment of the Owner such removal shall be necessary in order to protect the *Page 1385 
interest of the Owner. The Owner or the Supervisor, if any, shall have the right to require the Bidder to increase the number of its employees and to increase or change the amount or kinds of tools and equipment if at any time the progress of the work shall be unsatisfactory to the Owner or Supervisor; but the failure of the Owner or Supervisor to give any such directions shall not relieve the Bidder of its obligations to complete the work within the time and in the manner specified in this Proposal.
 "c. The manner of construction of the Project, and all materials and equipment used therein, shall be subject to the inspection, tests and approval of the Owner and the Administrator, and the Bidder shall furnish all information required by the Owner or by the Administrator concerning the nature or source of any materials incorporated or to be incorporated in the Project. The Owner and the Administrator shall have the right to inspect all payrolls, invoices of materials, and other data and records of the Bidder and of any subcontractor, relevant to the construction of the Project. The Bidder shall provide all reasonable facilities necessary for such inspection and tests and shall maintain an office at the site of the Project, with telephone service where obtainable and at least one office employee to whom directions and instructions of the Owner may be delivered. Delivery of such directions or instructions in writing to the employee of the Bidder at such office shall constitute delivery to the Bidder. The Bidder shall have an authorized agent accompany the Engineer when final inspection is made and, if requested by the Owner, when any other inspection is made."
Further, Article IV, Section 1, of the same contract provides:
 "Section 1. Protection to Persons and Property. The Bidder shall at all times exercise reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of Federal, State and Municipal safety laws and building and construction codes. All machinery and equipment and other physical hazards shall be guarded in accordance with the `Manual of Accident Prevention in Construction' of the Associated General Contractors of America, unless such instructions are incompatible with Federal, State or Municipal laws or regulations."
We cannot conclude that these provisions reserved in AEC the power to control the manner in which the various contractors performed their work. AEC merely retained the right to supervise or inspect the work of each independent contractor as it progressed for the purpose of determining whether it was being completed according to plans and specifications.
Thus, the contracts offered by appellant do not support his theory. This is not conclusive, however, because "[i]n Alabama, agency is determined by the facts, and not by how the parties may characterize the relationship." Semo Aviation, Inc. v.Southeastern Airways Corp., 360 So.2d 936, 940 (Ala. 1978). Weeks may, therefore, offer proof that AEC through its actions retained the right to direct the manner in which the contractors performed this work. Pate v. United States SteelCorp., 393 So.2d at 994-95.
The evidence offered by Weeks fails to show that such control existed. The memorandum of July 21, 1977, states in pertinent part:
 "Graham[1] reviewed for those present the Engineer's [Burns McDonnell] role on this project as follows:
1. The Engineer is not the prime contractor on site.
 2. Each contract is between AEC and the representative construction company.
 3. The Engineer is the Owner's agent to monitor contract compliance.
 Graham further stated the Engineer does not employ any construction workmen, nor give instructions to construction workmen employed on site." *Page 1386 
This memorandum does not show AEC's control over the manner of the work performed by the various contractors.
Finally, we examined the deposition of John B. Howard. Howard was employed by AEC as a project engineer. He was principally assigned to the Tombigbee project as AEC's representative. He primarily coordinated the activities of Burns McDonnell with AEC. Howard stated that each individual contractor was responsible for the safety of its employees and for the work which the contractor was to perform. According to Howard, AEC made no formal safety inspection, but he did say that if he had observed a dangerous situation, he would have tried to get the situation remedied. He did not, however, find it necessary to do this on the Tombigbee project.
Howard also attended weekly "coordination meetings." Safety on the worksite was one topic discussed. Howard's only input was to ask contractors to keep the worksite clean. There is no evidence in Howard's deposition which shows that AEC exercised any control over the manner of the contractors' work. Specifically, there is no evidence that AEC retained the right to direct the manner in which Weeks's employer, the Howard P. Foley Co., or the owner of the scaffold, Specialty Contractors, performed its work.
AEC, as the party moving for summary judgment, had the initial burden of clearly showing there is no genuine issue as to any material fact. Missildine v. Avondale Mills, Inc.,415 So.2d 1040 (Ala. 1981). AEC met this burden. Weeks, as the non-moving party then had to counter AEC's proof with evidence sufficient to give rise to a genuine issue of material fact. We find no evidence in the record to support Weeks's position. AEC was entitled to a summary judgment.
The next issue concerns the summary judgment granted in favor of Burns McDonnell and against Weeks. Weeks contends his substitution of Burns McDonnell for fictitious party "X" was proper. We do not agree.
Fictitious party "X" was described in appellant's original complaint as the "Person, firm or corporation who was the owner or party in control of the premises where the accident described in the complaint occurred."
In amending his complaint to substitute Burns McDonnell for "X," appellant identified "X" as "Burns and McDonnell Engineering Company, Inc., a corporation, the alter ego, servant, agent, or employee of Alabama Electric Cooperative, Inc., the owner of the real property and party in control of the premises where the accident described in the complaint occurred."
Rule 9 (h), Alabama Rules of Civil Procedure, provides:
 "When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
For Burns McDonnell to have been properly substituted for "X," Burns McDonnell would have to be either owner of the premises or the party in control of the premises.
In his amendment to the complaint, Weeks characterizes AEC as owner or party in control of the premises and Burns McDonnell as the alter ego, servant, agent or employee of AEC. Burns 
McDonnell was an independent contractor. Burns McDonnell prepared the design and specifications for the Tombigbee project. It contracted to ensure that the plant was built according to this design and these specifications. There is no evidence that Burns McDonnell was the alter ego, servant, agent or employee of AEC. Therefore, Burns McDonnell could not be "X." See, Minton v. Whisenant, 402 So.2d 971 (Ala. 1981).
The trial court was correct in granting summary judgment. The amendment adding Burns McDonnell as a party does not relate back to the original complaint and thus, the statute of limitations is a bar to this claim. See Walden v. MineralEquipment Co., 406 So.2d 385 (Ala. 1981); Minton *Page 1387 v. Whisenant, 402 So.2d 971 (Ala. 1981); Fowlkes v. LibertyMutual Ins. Co., 392 So.2d 803 (Ala. 1980); Roth v. Scruggs,214 Ala. 32, 106 So. 182 (1925). Burns McDonnell was entitled to summary judgment. The order of the trial court was correct, and the judgment is due to be affirmed.
Because we affirm the judgment in favor of AEC, it is not necessary to reach the issues in the appeal of AEC as to the summary judgment entered in favor of the third-party defendant, Sullivan, Long Hagerty.
AFFIRMED.
All Justices concur.
[1] Graham was a resident engineer for Burns McDonnell.