STEAGALL, Justice.
Conrad E. Jarman, an employee of Combustion Engineering Company, fell from a scaffold and injured his back while working on a boiler at an Alabama Power Company plant under a contract Alabama Power had with Combustion Engineering. Jarman and his wife, Margene, sued Alabama Power, alleging negligent breach of its duty, both as premises owner and as prime contractor, to provide Jarman with a safe work place, and alleging wantonness. The trial court granted Alabama Power’s motion for directed verdict as to the wantonness count but denied it on the negligence issue, and the jury awarded Jarman $350,000 and Margene $50,000 for loss of consortium. On appeal, Alabama Power argues that it did not reserve any control over the manner and methods of Jarman’s injury-producing activity and that Jarman knew or ought to have known of the defect that caused his injury.
Alabama Power contracted with Combustion Engineering in the fall of 1985 for Combustion Engineering to do certain maintenance and repair work on one of Alabama Power’s boilers at the Barry Steam Plant in Mobile County. Jarman was hired by Combustion Engineering from the boilermakers union to work on the “de-aerator” of Unit 5 at the plant. This de-aerator, or tank, was de-pressurized so that work could be performed inside the boiler. Such a scheduled shutdown was referred to as an “outage,” and Alabama Power had several other contractors involved with this particular outage. Rather than hire a manager to oversee the activities of the various contractors, Alabama Power had employees known as “area coordinators,” who walked around the job site to make sure contract specifications were being followed.
Jarman and his co-worker, Bobby Bush, were welding and replacing metal walls in the de-aerator of Unit 5 on November 28, 1985. They had access to the inside of the de-aerator by way of a 2" X 12" board, approximately 40 inches long, that extended from a manhole at one end of the de-aer-ator to another board that lay between two handrails and was horizontal to and about three feet above the floor. Although the men could either climb the three feet from the floor to the manhole or use this wooden *9 scaffold,[1] both Bush and Jarman used the scaffold.
On this particular day, Jarman had returned to the de-aerator after getting more welding rods; he began entering the de-aerator by climbing on the scaffold on his stomach, feet first, and inching his way inside. The de-aerator had an outer and an inner chamber, and once the outer chamber was entered, there was another manhole permitting access to the inner chamber. Jarman made it as far as the outer chamber, when the part of the board inside the outer chamber flipped up, causing him to fall and permanently injure his back.
The key issue before us is whether Alabama Power controlled the particular area, specifically the scaffold at the de-aer-ator, that caused Jarman’s injury, because if it did, then the jury had a basis for its finding that Alabama Power breached a duty to provide Jarman with a safe work place. The general rule regarding such a duty is as follows:
“[A] premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. ‘The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work.... When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant.’ ”
Weeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381, 1383 (Ala.1982) (citations omitted).
The record evidences not only that Alabama Power provided the scaffold from which Jarman fell, but also that it controlled the manner in which the welding was done. Both Bush and Jarman testified that an Alabama Power employee placed the scaffold in front of the de-aerator, where it remained until the day Jarman fell. The evidence was uncontroverted that the scaffold was not tied down, as required by OSHA regulations, and that, had it been, Jarman’s fall and resulting injury would have been averted. Jarman’s expert witness, Rufus Brock, stated that OSHA requires that such scaffolding be secured on both sides. He also testified that if the premises owner is in control of the activity at issue, he has the responsibility of furnishing a competent person to inspect the area and see that the OSHA regulations are followed.
There is evidence of such control on the part of Alabama Power. Bush recounted two separate incidents in which one Alabama Power employee told him how to cut the metal and what instrument to use, and in which another Alabama Power employee sat for a 4- to 6-hour period and changed the procedure by which Bush was welding. Furthermore, Charles Stubbs, the Alabama Power person in charge of the outage at Unit 5, acknowledged that Alabama Power had the authority to fire a Combustion Engineering employee if an occasion warranted such action. Such authority negates Combustion Engineering’s status as an independent contractor. Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276 (1933).
Alabama Power argues that Pate v. United States Steel Corp., 393 So.2d 992 (Ala.1981), and Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala.1983), are controlling. Under the facts apparent from the record, we disagree and find instead that Alabama Power Co. v. Henderson, 342 So.2d 323 (Ala. 1977), applies. In Henderson, the plaintiff was injured when freshly poured concrete at a smokestack fell on him. In affirming a judgment based on the jury’s verdict in his favor, we found that Alabama Power closely supervised the mixing and pouring of the concrete. Both Pate and Columbia Engineering involved plaintiffs who fell from scaffolding, but in those cases the scaffolding was not procured or assembled by the defendants and the defendants nei *10 ther controlled nor supervised the activity in which the plaintiff was engaged. See, also, Chrysler Corp. v. Wells, 358 So.2d 426 (Ala.1978).
Alabama Power moved for a JNOY or, in the alternative, a new trial, which was denied. The presumption of the correctness of a jury verdict is further strengthened by the trial court’s denial of a motion for new trial. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988); Ashbee v. Brock, 510 So.2d 214 (Ala.1987). The facts concerning Alabama Power’s control were sharply disputed and the issue was appropriately one for resolution by the jury. There is ample evidence in the record from which the jury could reach the result that it did; thus, the trial court’s denial of a new trial was correct. The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.

. Occupational Safety and Health Administration (OSHA) regulations define a "scaffold" as any temporary elevated platform and its surrounding structure used to support workmen or materials or both.