549 So.2d 454 (1989)
Richard T. MILLER
v.
DEGUSSA CORPORATION and Clemco Industries, Inc.
87-1103.
Supreme Court of Alabama.
July 28, 1989.
*455 Mark R. Ulmer of Drinkard, Sherling & York, Mobile, for appellant.
Norman E. Waldrop, Jr. and Bernard P. Matthews, Jr. of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellee Degussa Corp.
Davis Carr and Archibald T. Reeves IV, Mobile, for appellee Clemco Industries, Inc.
ALMON, Justice.
This appeal arises from a summary judgment for the defendants in an action arising out of a workplace injury. The issue is whether summary judgment was proper either for the defendant premises owner on a claim based on an alleged failure to provide a safe place to work or for the defendant manufacturer of a sandblasting nozzle on a claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD).
Richard T. Miller was injured when he fell from a scaffold while working as an employee of Mundy Industrial Maintenance, Inc. Miller was working in furtherance of a contract between Mundy and the Degussa Corporation by which Mundy provided maintenance services at Degussa's plant. On the day of the accident, Miller was performing sandblasting from a scaffold that did not have a handrail. According to Miller, when he set the sandblasting hose down, the hose became pressurized, through no action on his part, and swung around and hit him, knocking him from the scaffold. The control nozzle was manufactured by Clemco Industries, Inc. Miller filed this action against Degussa and Clemco.
Miller claims that Degussa owed a duty to provide him with a safe place to work, arising from the control he alleges Degussa exercised over the manner in which he and the other Mundy employees performed their jobs. The issue is whether the trial court erred in granting Degussa's motion for summary judgment based on its finding of no evidence that Degussa retained the right to control the manner in which Miller performed his work for Mundy.
The relationship between Degussa and Mundy is that of landowner and independent contractor. The duty arising from such a relationship was examined in Weeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381 (Ala. 1982), where this Court stated:
"The principles regarding the legal duty of a premises owner to provide a safe place to work for employees of an independent contractor are well settled. See, e.g., Alabama Power Co. v. Smith, 409 So.2d 760 (Ala. 1981); Thompson v. City of Bayou La Batre, 399 So.2d 292 (Ala.1981); Pate v. United States Steel Corp., 393 So. 2d 992 (Ala.1981); Hughes v. Hughes, 367 So. 2d 1384 (Ala. 1979); Evans v. Kendred, 362 So.2d 206 (Ala. 1978); Chrysler Corp. v. Wells, 358 So.2d 426 (Ala.1978).
"These cases firmly establish the general rule that a premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. `The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work.' Thompson v. City of Bayou La Batre, 399 So.2d at 294; Hughes v. Hughes, 367 So.2d at 1386. `When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant.' 399 So.2d at 294." 419 So.2d at 1383. See also Pickett v. United States Steel Corp., 495 So.2d 572 (Ala. 1986). Miller maintains that the general rule of no duty does not apply in this case, because, he argues, Degussa retained the right to direct the manner in which Mundy employees performed their work, thus changing the relationship from that of premises owner and independent contractor to that of master and servant.
Miller presented evidence through affidavits and depositions of the following facts: Leendert Tapper, a Degussa employee, scheduled Mundy's activities by various job areas and scheduled a certain number of hours of work for each job. Tapper also periodically examined the progress of the work and, from time to time, moved Mundy *456 employees from one job site to another. When disputes arose between Tapper and supervisory personnel from Mundy, the disputes were resolved in Tapper's favor. After one such dispute, John Kelly, a Mundy supervisor, told the Mundy employees that Tapper "was the head of the painters and if [Tapper] told [the Mundy employees] to do something, they were to do it." After that discussion, Mundy employees followed Tapper's orders as to how to perform their work, when to perform their work, and when to begin and end their work. On many occasions Tapper would stop Mundy employees from painting or sandblasting, to correct the manner in which they performed their work. Tapper also pointed out violations of Degussa's and Mundy's safety rules to the Mundy employees.
The evidence presented by Miller presents a question of fact as to whether Degussa retained the right to control the manner in which Mundy employees performed their jobs. Therefore, the trial court erred in granting Degussa's motion for summary judgment.
In addition to the claim against Degussa, Miller included a claim against Clemco under the AEMLD. The substance of the claim is that the "deadman" switch on the nozzle of the sandblasting hose that Miller was using at the time of the accident was defective and that, due to the defective switch, the sandblasting hose became pressurized and struck Miller, causing him to fall off the scaffold.
The only evidence presented by Miller concerning the claim against Clemco is that the deadman switch may have failed. The evidence shows that the switch was discarded by Degussa shortly after Miller's accident and, as a result, was not presented as evidence. No evidence was presented from which a jury could determine that the pressurization of the hose was caused by a defect in the switch.
In Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala.1981), this Court held:
"Liability is not established merely by showing that the product failed in furthering or performing its intended use. The plaintiff must prove that the product was substantially unaltered when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the defendant. 2 Frumer-Friedman, Products Liability, § 16A[4][e][i] (1980).
"It is not enough to show, for example, that [defendant] sold the [product] and that [plaintiff] was injured.
"`The fact of an injury, of course, does not establish the presence of a defect. Thus recovery cannot be predicated on injury alone, for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability.'
"Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir. 1975). Necessarily, then, this test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale."
395 So.2d at 996. Because Miller presented no evidence other than the fact that the switch may have failed, we hold that Miller did not present even a scintilla of evidence[1] to support a claim under the AEMLD.
Miller alternatively argues that Clemco had a duty to warn of the hazards presented in certain uses of the switch. Under the facts of this case, the only possible proximate cause of Miller's injury would have been a defective condition in the switch. Therefore, we hold that the trial court did not err in entering summary judgment in favor of Clemco.
The judgment of the trial court is affirmed as to Miller's claim against Clemco and is reversed as to Miller's claim against Degussa, and the cause is remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
*457 HORNSBY, C.J., and MADDOX and ADAMS, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
The case of Pate v. United States Steel Corp., 393 So.2d 992 (Ala.1981), is justifiably relied upon by Degussa in its excellent brief. In Pate, this Court affirmed a judgment based on a directed verdict in favor of United States Steel Corporation, because there was no evidence that it had reserved control over the manner in which the employees of an independent contractor performed their work. Pate has been frequently followed by this Court, and we have upheld directed verdicts and summary judgments where the actions of the premises owners were insufficient to demonstrate a retention of control over the manner in which the independent contractor's work was performed. Pugh v. Butler Telephone Co., 512 So.2d 1317 (Ala.1987); Pickett v. United States Steel Corp., 495 So.2d 572 (Ala. 1986); Columbia Engineering Int'l, Ltd. v. Espey, 429 So.2d 955 (Ala.1983); Weeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381 (Ala.1982); Alabama Power Co. v. Smith, 409 So.2d 760 (Ala.1981); Thompson v. City of Bayou La Batre, 399 So.2d 292 (Ala.1981).
It appears that there is some evidence that Degussa retained the right to, and did, control the manner in which the employees of the independent contractor performed their duties. Therefore, it is for the trier of fact to determine whether Degussa, as a fact, retained the right to, and did, control the manner in which the employees of the independent contractor performed their duties. If it did, then Degussa had a duty to provide Miller a safe place to work. If it did not, then Degussa had no such duty and there should be a verdict for Degussa.
NOTES
[1] This action was filed before the effective date of Ala.Code 1975, § 12-21-12, which substituted the substantial evidence rule for the scintilla rule.