ALMON, Justice.
William B. Hurst filed this personal injury action, alleging that Wallace Construction Company, Inc. (“Wallace Construction”), had negligently inspected his workplace and that, as a result, he sustained severe injuries to his back. His wife joined the action, claiming loss of consortium; we will not discuss her claim separately, because it is derivative. Wallace Construction filed a motion for summary judgment, arguing that, as a general contractor, it had not undertaken a duty to inspect the equipment of an independent subcontractor’s employee. The trial court entered a summary judgment in favor of Wallace Construction.
To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. If the moving party satisfies its initial burden, the nonmoving party has *986 the opportunity to defeat the motion by producing substantial evidence establishing a genuine issue of material fact. Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. West v. Founders Life Assur. Co., 547 So.2d 870, 871 (Ala.1989). “In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the record in the light most favorable to the non-movant and resolves all reasonable doubts against the movant.” Specialty Container Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403, 404 (Ala.1990).
Hurst was working as an electrician in the construction of a shopping center. His employer, AAA Electric Company, Inc. (“AAA”), was an independent subcontractor. The general contractor was Wallace Construction. The contract required the subcontractor to provide all the materials, labor, and equipment required to complete the subcontractor’s part of the work.
On the day of the accident, Hurst’s supervisor, Jerry Thornell, ordered him to install electrical mechanical tubing in certain areas of the construction project. Thornell was also an employee of AAA, not of Wallace Construction. Hurst followed Thornell’s order and began installing the tubing. The installation of the tubing required him to work from a scaffold. The record does not indicate who owned the scaffold or who assembled it, but Thornell told Hurst that the scaffold was already set up. He worked all morning and continued after his lunch break.
After his lunch, he climbed on the scaffold and continued to install the tubing. The scaffold collapsed and Hurst fell approximately 12 to 15 feet onto the concrete floor, suffering injuries to his back. Hurst alleges that the scaffold collapsed because it had been improperly assembled. He testified that, after his fall, he saw that portions of the scaffold had been assembled with wire rather than with metal pins or bolts. Furthermore, he testified that, after his fall, some of his co-employees of AAA reassembled the scaffold, using wire instead of pins at some of the junctions. Since his fall and resulting injury, Hurst has undergone two surgeries and has experienced pain and discomfort.
In his complaint, Hurst alleged that Wallace Construction was liable for his injuries because, he claimed, Wallace Construction had negligently inspected the site of the construction project for safety hazards. To recover under this theory, Hurst must prove that Wallace Construction “had (1) undertaken to inspect the construction site, particularly the area in which the injury-causing hazard [was] located, (2) performed such inspection negligently, and (3) that such negligence was the proximate cause of his injury.” Hughes v. Hughes, 367 So.2d 1384, 1387 (Ala.1979). In support of its motion for summary judgment, Wallace Construction presented evidence that the contract gave it the right, but did not impose a duty, to inspect for safety, as well as evidence that it had not undertaken a duty to inspect for safety.
Attempting to show that Wallace Construction had undertaken a duty to inspect for safety, Hurst submitted the testimony of Wallace Construction’s field superintendent, Joseph Wheeler, including the following:
“Q. Tell me again what you would be doing when you would be out in the field walking around the project. What kind of work would you be doing?
“A. Just checking to see if each sub is doing what they need to be doing in order for another sub to come in behind them and coordinate the work in the order that it should be done.
“Q. Was part of your job in walking around the project supervising to check for safety violations?
“A. Yes, sir.
“Q. Did you do that on this project?
“A. Yes, sir.
“Q. Did you also check each individual work area, subcontractor’s work area, for safety violations?
“A. Well, I’m looking at the job as a whole.
*987 “Q. You check the whole job site?
“A. Yes, sir. I made four or five trips a day walking over the job site.
“Q. What kind of safety violations would you be looking for?
“A. The biggest thing would be nails sticking up in boards where they have been wrecked from forms.
“Q. Did you ever check any of the scaffolding that had been assembled by the subcontractors?
“A. No, sir.
“Q. Did you consider that part of your job, to check the scaffolding?
“A. Not for the subcontractors. I would if I had had some of my own.
“Q. You didn’t feel that it was your responsibility to make sure that the scaffolding that the subs put up was safe for the workmen?
“A. No, sir.
“Q. You were just primarily interested in looking after the employees of Wallace Construction Company?
“A. Yes, sir.
“Q. You were not concerned about—
“A. Yes, sir.
“Q. —employees of the subs?
“A. Yes, sir, I was concerned about them. If I had come by a scaffold that jumped out at me that wasn’t safe, I would have said something rather than have somebody hurt.
“Q. If you would have actually noticed it, you would have said something?
“A. Yes, sir.
“Q. But you didn’t look for anything? In other words, you were not inspecting for dangerous scaffolding?
“A. No, sir.
[[Image here]]
“Q. As part of the safety program, were you inspecting a job site on behalf of the employees of Wallace Construction Company?
“A. Yes, sir.
“Q. And were you also inspecting the job site on behalf of the employees of the subcontractors?
“A. Can you rephrase that?
Q. Okay. [Insofar] as the safety program that Wallace Construction Company was conducting on the job site—
“A. Right.
“Q. —were your safety inspections also aimed at protecting the employees of the subcontractors?
“A. Right.”
Rather than showing that Wheeler, and thereby Wallace Construction, had undertaken a duty to inspect for all safety hazards for the benefit of all persons on the construction site, this testimony shows only that Wheeler inspected the site for common hazards such as accumulations of discarded construction materials. It does not show that he undertook the duty to inspect or in fact inspected the equipment, such as scaffolds, that was provided, assembled, and used by independent subcontractors.
In Alabama Power Co. v. Williams, 570 So.2d 589 (Ala.1990), this Court reversed a judgment for the plaintiff, holding that the evidence would, not support a finding that Alabama Power had undertaken a duty to conduct safety inspections. The Court stated:
“The defendant’s contractual right to enforce safety if a violation is observed does not, alone, constitute a voluntary assumption of the duty to inspect for safety.... Also, the defendant’s having employees on the site to monitor contract compliance by the independent contractor will not impose a legal duty of safety inspection upon the defendant.
"... The evidence produced during the plaintiff’s case consists of hypothetical questions and answers that show that if one of APCo’s employees saw a scaffold supported by an impulse line, then it would be his job to point it out to [the independent contractor].”
570 So.2d at 591 (citations omitted). In Barron v. Construction One, 514 So.2d 1351, 1353 (Ala.1987), the Court affirmed a summary judgment for a defendant general contractor, Construction One:
“In the instant case, there was an agreement between Construction One and AMCO [the subcontractor that employed the plaintiff] that provided that *988 AMCO was to furnish all the equipment, labor, tools, etc., and that Construction One had the right, but not the obligation, to inspect the equipment used by AMCO. The evidence established that AMCO furnished the ladder used by Barron and that Construction One had never inspected the ladder or any other equipment used by AMCO employees.”
The Court reached similar holdings in Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala.1983); and Pate v. United States Steel Corp., 393 So.2d 992 (Ala.1981).
Because Wheeler’s testimony, considered in its entirety and in the proper context, does not amount to substantial evidence that Wallace Construction undertook a duty to inspect the equipment of the subcontractors for safety hazards to the subcontractors’ employees, the trial court’s summary judgment in Wallace Construction’s favor is due to be, and it is hereby, affirmed.
AFFIRMED.
ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.