SHORES, Justice.
Lawrence Terrell appeals from a summary judgment entered in favor of the defendant, Georgia Power Company. Terrell was injured when he fell from a walkway while working at ORBA Transhipment Company, owned by the defendant. Terrell claimed that Georgia Power and various fictitiously named parties had negligently and/or wantonly failed to provide him a safe workplace; had negligently and/or wantonly caused or allowed faulty loading facilities to exist at his workplace; and had breached express or implied warranties.
The trial court entered summary judgment in favor of Georgia Power on September 11, 1989, and entered a final judgment with respect to Georgia Power pursuant to A.R.Civ.P. 54(b). Terrell filed a motion to reconsider the summary judgment on October 10, 1989, and filed an amended complaint on December 15, 1989. The defendant filed a motion to strike from the motion to reconsider the affidavits of Jack Smallwood and Dennis Howard and to strike the amended complaint. The amended complaint alleged that Georgia Power breached a contract it had with Terrell’s employer, ORBA Transhipment Company, to make modifications to the facility in order to bring it into compliance with Occupational Safety and Health Administration (OSHA) requirements. The trial court denied the motion to strike and denied Terrell’s motion to reconsider. The trial court granted the defendant’s summary judgment motion as to Terrell’s original and amended complaints.
Terrell was a maintenance employee for ORBA Transhipment Company at the Pride transloading facility owned by Georgia Power. ORBA contracted with Georgia Power to manage and operate the facility under the terms of a “facility operation agreement.” The transloading facility was used to blend coal for Georgia Power. On the night of Terrell’s injury, ORBA employees were unloading coal from barges. Terrell’s foreman, an ORBA employee, directed him to adjust the brakes on the unload-ers, a machine used to unload the barges. After adjusting the brakes, Terrell attempted to step over an open area three to three-and-a-half feet wide to reach a catwalk. Terrell, who was carrying tools at the time, slipped on the edge of the catwalk, which was moist with dew. He fell approximately five to six feet and hit his knee on a steel ladder rung. Terrell went to the emergency room of a nearby hospital. His knee has been operated on twice as a result of the fall, and he alleges that he is permanently injured and continues to suffer pain requiring medication.
Terrell argues that Georgia Power, through its contract with ORBA, retained control over the manner in which ORBA performed its work and, thus, had the duty to provide ORBA employees with a safe workplace. Under the general rule,
“[A] premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. ‘The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work.’ Thompson v. City of Bayou La Batre, 399 So.2d [292] at 294 [ (Ala.1981) ]; Hughes v. Hughes, 367 So.2d [1384] at *292 1386 [ (Ala.1979) ]. ‘When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant.’ 399 So.2d at 294.
“A master-servant relationship is not created, however, when the owner merely retains the right to supervise or inspect work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications, and retains the right to stop work that is not properly done. Pate v. United States States Steel Corp., 393 So.2d [992] at 995 [ (Ala.1981) ].”
Weeks v. Alabama Elec. Coop., 419 So.2d 1381, 1383 (Ala.1982).
Pertinent provisions of the contract between ORBA and Georgia Power are as follows:
“SECTION 3. DUTIES OF ORBA
“3.1. From and after the Commencement of Operations and during the term of this Agreement, ORBA shall manage and operate the Facility in a good and workmanlike manner pursuant to the terms of this Agreement, will conduct operations efficiently in accordance with sound and customary practices in the industry, and will dedicate all reasonable efforts to the proper and efficient management of the Facility. By way of amplification, and not in limitation of the foregoing, ORBA shall:
“(a) Operate, maintain, service and repair the Facility in the manner and to the extent that ORBA would, in the exercise of prudent management having due regard for the special operational and maintenance requirement of the Facility, operate, maintain, service and repair comparable property and facilities if owned by ORBA for use in the transloading, storage and proportioning of coal, and in any event, to the extent required to maintain and operate the Facility in accordance with this Agreement; such maintenance, service and repair shall include all services, supplies, and other maintenance materials required to keep the Facility in good and usable condition for its intended purpose and such operation shall include proportioning of coal from available coal stock at the Facility in accordance with the instruction of Georgia Power;
[[Image here]]
“(f) Observe proper standards of safety in accordance with good industry practice and applicable laws and regulations, as the same shall exist from time to time;
[[Image here]]
“(h) Provide sufficient qualified personnel to properly man and operate the Facility in accordance herewith;
[[Image here]]
“3.4. Notwithstanding the foregoing, ORBA shall not be obligated for, and Georgia Power shall bear, and shall indemnify and hold ORBA harmless from the following costs, charges, fees and expenses relating to the ownership or operation of the Facility:
[[Image here]]
“(e) All costs of additions and capital improvements to the Facility after the Commencement of Operations, except as provided under the provisions of Section 13;
“(f) All consequential loss or consequential damage, other than consequential loss or consequential damage, resulting from the terms of, or claims made under, contracts between Georgia Power and the barge or rail carriers serving the facility, attributable, in whole or in part, to the performance or non-performance of this Agreement, arising from any cause whatsoever, and irrespective of whether caused or allegedly caused by negligence;
[[Image here]]
“SECTION 4. DUTIES OF GEORGIA POWER
“Georgia Power shall have the following duties and responsibilities in connection with the operation and management of the Facility by ORBA:
*293 “(a) Cause the completion of the construction, erection and equipping of the Facility in accordance with the Construction Contract and drawings listed on Schedule 4, including the performance and other warranties contained therein, and bear any cost or expense for correction, repair or replacement of any defective or deficient work thereunder. Specifically included hereunder Georgia Power agrees that it shall be responsible for and shall cure all design and construction deficiencies or defects in either structural or mechanical components which either directly or indirectly cause the Facility or any equipment or components thereof to be or become inoperable or fail to operate at the rates required to maintain the efficient transloading of coal anticipated to be handled during the term of this Agreement. However, Georgia Power shall not be responsible for any failures or transloading rate reductions which can be overcome by normal and reasonable repairs or equipment replacements occasioned by normal wear and tear or failure of ORBA to properly operate or maintain the equipment;
[[Image here]]
“(g) Make or cause to be made, at its own expense, such additions or modifications to the Facility as are (i) required in order to bring the Facility into compliance with any present or future laws, ordinances or regulations of any governmental authority having jurisdiction, (ii) required by any barge or rail carrier transporting coal to or from the Facility in order to permit operation of the Facility as provided for hereunder, or (iii) deemed by Georgia Power to be necessary or advisable;
[[Image here]]
“SECTION 13. CAPITAL IMPROVEMENTS
“ORBA may, at its option, cause improvements or additions to be made to the Facility. All improvements or additions are subject to the prior written approval of Georgia Power.
“SECTION 14. INDEMNIFICATION AGREEMENT
“14.1. ORBA hereby indemnifies and agrees to hold Georgia Power harmless from and against any and all loss, costs, damages or expenses, both direct and indirect (including, without limitation, any and all legal fees arising out of possible litigation), suffered or incurred by Georgia Power arising from, or out of, or by reason of any citation, violation or formal or informal warning, issued to Georgia Power during or with respect to the term of the Operating Agreement by any agency, bureau, or administrative agency of the United States Government, including without limitation the Occupational Safety and Health Administration, directly or indirectly related to working conditions, job safety, plant or materials at the Facility, excepting any such factors existing on or prior to the commencement of operations, and excepting the cost or expenses of, and damages occasioned by the need for, any additions or modifications to the Facility necessary to bring the Facility into compliance with any present or future laws, ordinances, or regulations of any governmental authority.
[[Image here]]
“14.3. Georgia Power hereby indemnifies and agrees to hold ORBA harmless from and against any and all loss, costs, damages or expenses, both direct and indirect (including, without limitation, any and all legal fees arising out of possible litigation), suffered or incurred by ORBA arising from, or out of, or by reason of any citation, violation or formal or informal warning, issued to ORBA during or with respect to the term of the Operating Agreement by any agency, bureau or other regulatory authority of the United States Government, including, without limitation, the Occupational Safety and Health Administration, directly or indirectly relating to any factor or factors, such as the design, installation, lay-out or equipping of the Facility, existing on or prior to the commencement of operations, and for any costs or expenses (i) for the correction, repair or replacement of any defective or deficient workmanship or materials performed or sup *294 plied by persons other than ORBA, and (ii) of any modifications or additions required to bring the Facility into compliance with any present or future laws, ordinances or regulations of any governmental authority.
“SECTION 15. MISCELLANEOUS
[[Image here]]
“15.8. In performing the services provided hereunder, ORBA agrees that it shall be considered an independent contractor and no agent, employee or representative of ORBA shall be considered to be an agent, employee or representative of Georgia Power.”
The unloading facility was manufactured by a company called Heyl and Patterson and was installed during the construction of the transloading facility. The plaintiff submitted the affidavit of an industrial safety expert who testified that the open area Terrell had to step over between the catwalk and the brakes constituted an OSHA violation. Jerry Ledbetter, the only Georgia Power employee at the facility daily, testified that ORBA could have installed an extra catwalk or guardrails to the area without the approval of Georgia Power.
Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R. Civ.P.; Ray v. Montgomery, 399 So.2d 230 (Ala.1980). Because there was evidence that the open area Terrell stepped over constituted an OSHA violation and that under the contract Georgia Power had the responsibility to make modifications required to bring the facility into compliance with “laws, ordinances or regulations of any governmental authority,” Georgia Power was not entitled to summary judgment as a matter of law.
For the reasons stated above, we reverse the judgment and remand this cause.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.