The issue in this case is whether the trial court erred by entering a summary judgment on behalf of the defendants, Alabama Power Company ("APCo") and Southern Company Services, Inc. ("SCS"), on a negligence claim, on the ground that the plaintiff, an employee of an independent contractor, had failed to present substantial evidence that either defendant had reserved the right to control the manner in which he performed his job or was substantially involved in the activity that caused his alleged injury.
 FACTS
On April 14, 1988, Robert B. Kendrick was injured while working in a coal mine, Mary Lee Number 1 ("Mary Lee"), in the course of his employment with Drummond Coal Company ("Drummond"). On the date of the accident, Kendrick was working in the mine as a "trip rider." A "trip rider" is one who assists in the loading and unloading of supplies and materials that are transported through the mine on material cars.
Kendrick had just finished delivering materials when a Drummond foreman instructed him to load some "battery skids" on the empty material car. A battery skid is a 14-foot-long, 10-inch thick, rectangular, 3,000-pound piece of steel. The skids were loaded into the material car, but because the skids were longer than the material car they protruded upwards out of *Page 913 
the car. As the skids were being hauled through the mine, Kendrick was walking alongside the car, picking up trash, as he had been instructed to do by Drummond employees. At one point during that haul, Kendrick stepped onto the back of the car to ride past a narrow spot in the mine. This narrow place also had a low ceiling. As the material car went past, the protruding skids struck the roof, causing the roof to fall onto Kendrick, severely injuring him.
Kendrick and his wife sued APCo and SCS, alleging negligence and/or wantonness.[1]
It is undisputed that Drummond leases the Mary Lee mine from APCo under a lease and coal sales agreement,[2] and that SCS was hired by APCo to oversee the mining operations in order to ensure compliance with the lease. According to the terms of the lease, Drummond has rights to "all the recoverable coal" in the mine. Drummond is to provide, and APCo is to purchase, a minimum of 142,000 tons of washed coal per month, and any excess may be sold by Drummond to any purchaser.
The agreement provides, among other things, as follows:
 "Lessee [originally Alabama By-Products Corporation; now Drummond] hereunder shall be an independent contractor. Lessor [APCo] shall have no control or right to exercise any control whatsoever over the employees of [Drummond]. [APCo] shall have no control or right to exercise any control whatsoever over [Drummond] either in the construction of the mine or in mining operations under this lease except to extent that the breach of any of the terms of this lease shall give [APCo] the right to terminate the same and then only to the extent of terminating this said lease by reason of such breach.
 "As such independent contractor, [Drummond] shall control its mining operations, make such expenditures on development and equipment, as, in its sole judgment, it considers to be advisable, subject only to its covenant to mine the recoverable coal in a workmanlike manner and according to the minimum level of operations provided for herein."
The agreement between Drummond and APCo is a "cost based" contract, and it sets forth an equation to be utilized in determining the cost and price of the coal mined by Drummond and sold to APCo.[3] The agreement contains specific detailed provisions regarding the quality and size of the coal to be supplied to APCo and the coal is transported directly from the mine by overland conveyor belt to APCo's Gorgas Steam Plant, where it is used to generate electricity.
 I
The basis of the Kendricks' claim against APCo and SCS is that APCo, as owner of the mine, and SCS, as an agent of APCo, exercised such extensive control over the operation of the mine that a master/servant relationship was created between APCo and Drummond so that APCo owed Kendrick, an employee of Drummond, a duty to provide him with a safe workplace. Therefore, the Kendricks argued to the trial court that APCo, and its agent SCS, were liable for the alleged negligent and wanton conduct of Drummond. APCo and SCS, however, argued that they were only overseeing the quality and quantity of coal produced in order to ensure compliance with the terms of the agreement.
After oral argument, and the submission of depositions, affidavits, documents, and briefs, the trial court entered a summary judgment on behalf of APCo and SCS. The Kendricks appeal. We affirm. *Page 914 
 II
In order to prove negligence or wantonness, Kendrick must prove that APCo and SCS owed him a duty, breached that duty, and injured him as a result of that breach. Alabama Power Co.v. Smith, 409 So.2d 760 (Ala. 1981). The trial court held that Kendrick did not submit substantial evidence that APCo and SCS owed him a duty. The determination of the existence of a duty is a question for the court,[4] and we hold that under the facts presented here Kendrick failed to show that the defendants owed a duty to him. See Fletcher v. Hale, 548 So.2d 135 (Ala. 1989).
It is well settled in Alabama that the owner of premises, such as APCo, generally does not owe a duty to the employees of an independent contractor with respect to work conditions. SeeWeeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381
(Ala. 1982); Pate v. United States Steel Corp., 393 So.2d 992
(Ala. 1981); Hughes v. Hughes, 367 So.2d 1384 (Ala. 1979). There are exceptions, of course. As was stated in Weeks:
 " 'The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work.' Thompson v. City of Bayou La Batre, 399 So.2d [292] at 294 [(Ala. 1981)]; Hughes v. Hughes, 367 So.2d at 1386. 'When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant.' [Thompson,] 399 So.2d at 294.
 "A master-servant relationship is not created, however, when the owner merely retains the right to supervise or inspect work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications, and retains the right to stop work that is not properly done. Pate v. United States Steel Corp., 893 So.2d at 995."
Weeks, 419 So.2d at 1383. (Emphasis added.) See also, AlabamaPower Co. v. Smith, 409 So.2d at 764.
We have examined the agreement between Drummond and APCo, and we conclude that there was insufficient evidence presented to support Kendrick's claim of a reserved right to control by the defendants over Drummond and its employees.
The lease and coal sales agreement between Drummond and APCo was a "cost based" contract, a contract, as the brief submitted by APCo and SCS notes, not unlike one this Court interpreted inStockley v. Alabama Power Co., 283 Ala. 664, 220 So.2d 605
(1969). In Stockley, an employee of Alabama By-Products Corporation ("ABC") sued APCo because of injuries caused by an allegedly defective mine locomotive. The plaintiff's allegations were similar to those Kendrick makes in this case, specifically that APCo "either had control of the mining premises or had undertaken to control them and owed a duty to the employees of ABC to provide reasonably safe works, ways, and machinery for the performance of their duties." Stockley,283 Ala. at 665, 220 So.2d at 60506. This Court held the following:
 "By its overall terms the contract was one for the purchase of coal on a cost plus basis. The ultimate costs, and particularly those imposed upon the power companies at the expiration of the contract were largely to be determined by the costs of operating and maintaining the mine and its machinery. Common prudence would dictate that the power companies reserve to themselves a means of controlling these costs. This *Page 915 
they did by reserving to themselves some authority in the matter of operating costs, capital expenditures, and maintenance. . . .
 "The contract placed upon ABC, the sole owner and operator of the mine, the responsibility for the construction and operation of the mine, efficiently and in accordance with good mining practice.
 "The rights reserved to the power companies were obviously for their own protection, and not for the employees of ABC, the owner and operator of the mine."
Stockley, 283 Ala. at 667, 220 So.2d at 608. See Connors-WeymanSteel Co. v. Kilgore, 189 Ala. 643, 66 So. 609 (1914).
This Court concludes that the lease and coal sales agreement reserves only a right for APCo to control cost items and make routine mine visits to observe the progress of work. The agreement does not reveal that APCo retained any rights to control the manner or method by which Drummond operates. On the contrary, the contract specifically states that Drummond is an independent contractor and that APCo will have no right to control the construction of the mine or its mining operations. Nevertheless, we recognize that " '[i]n Alabama, agency is determined by the facts, and not by how the parties may characterize the relationship.' " Weeks, 419 So.2d at 1385, quoting Semo Aviation, Inc. v. Southeastern Airways Corp.,360 So.2d 936, 940 (Ala. 1978). Consequently, we must review the record to determine if the Kendricks submitted substantial evidence that either APCo or SCS actually exercised control over the manner or method by which Drummond and its employees mined coal.
 III
APCo and SCS introduced in support of their motion for summary judgment a dozen affidavits, all of which stated that no APCo or SCS employee ever gave directions to any Drummond employee concerning the manner and method of job performance. Furthermore, APCo and SCS submitted Robert Kendrick's own deposition, in which Kendrick, although claiming that Drummond "had Alabama Power Company employees in the mine daily telling us what to do, when to do it and how to do it," nevertheless admitted the following:
 "Q. But did anyone from Alabama Power Company ever supervise your work?
"A. No.
 "Q. Did anyone from Alabama Power Company ever tell you how to do your job?
"A. No.
 "Q. Did anyone from Alabama Power Company ever tell you what equipment to use?
"A. No."
In response to APCo and SCS's motion for summary judgment, the Kendricks submitted several excerpts of depositions from individuals associated with the mine, as well as an affidavit by Robert Kendrick. We have examined this evidence, and we, like the trial court, do not find that the type of activity engaged in by the defendants here is different from what this Court has previously recognized is inherent in the nature of the agreement that APCo entered into with Drummond. SeeStockley, 283 Ala. at 667, 220 So.2d at 608.
The Kendricks claim that they presented substantial evidence of a reserved right to control by showing that SCS employees regularly attended safety meetings. They submitted several reports made by SCS and delivered to APCo, claiming that they were safety reports. We have reviewed these reports and the argument of the Kendricks, and we conclude that this evidence is insufficient to show, in view of the terms of the agreement, that a master-servant relationship was created between Robert Kendrick and the defendants.
Based on the foregoing, we hold that the trial court did not err in finding that the Kendricks failed to submit substantial evidence that APCo or SCS owed a duty to Drummond's employees and to Robert Kendrick in particular.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Mrs. Kendrick's claim alleges a loss of services, society, and companionship of her husband.
[2] The lease and coal sales agreement was initially between APCo and Alabama By-Products Corporation and runs from January 1, 1974, to June 30, 1994. Drummond subsequently acquired Alabama By-Products Corporation and now operates Mary Lee under the same lease.
[3] Essentially, Drummond charged APCo 70 cents over cost per ton of washed coal.
[4] Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law.
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). *Page 916