[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 410 
The issue in this case is whether the trial court erred by directing a verdict for the defendants, Georgia Power Company and its agent Jerry Ledbetter, on the ground that the plaintiffs presented no substantial evidence to support their claims that Georgia Power retained sufficient control of the premises to obligate it to provide Wendell Renfro with a safe place to work.
 I. FACTS
On July 23, 1988, Wendell Renfro was injured while working for ORBA Transhipment Company, in a coal mine in Pride, Alabama, pursuant to a contract ORBA had made with Georgia Power. On the day of the accident, Renfro and a co-employee were ordered, by an ORBA foreman, to clean the aisles of a tunnel in the mine. While the two men were in the tunnel, Renfro slipped and fell, twisting his back. Shortly thereafter, he suffered severe pain; a physician diagnosed his problem as a herniated disk.
It is undisputed that ORBA contracted with Georgia Power to manage and operate the facility under the terms of a "facility operation agreement." That agreement stated that ORBA would operate the mine as an independent contractor. Under its terms, ORBA was obligated to operate, manage, maintain, service, and repair the Pride facility and to provide personnel and supplies to run it. Georgia Power, however, was obligated to make any additions or modifications to the facility necessary to keep it in compliance with "any present or future laws, ordinances or regulations of any governmental authority having jurisdiction."[1]
Georgia Power kept an employee on the site of the Pride mine; that employee, Jerry Ledbetter, had the responsibility for keeping the Georgia Power property in compliance with "any present or future laws, ordinances or regulations of any governmental authority having jurisdiction." This Georgia Power employee also was required to provide ORBA information concerning the quality and quantity of coal that Georgia Power needed from time to time.
Renfro and his wife sued Georgia Power, and Ledbetter as Georgia Power's agent, alleging that they had negligently or wantonly failed to exercise reasonable care to keep the Pride coal mine in a reasonably safe condition. They also alleged that Georgia Power and Ledbetter had breached Georgia Power's contract with ORBA to make additions and modifications to keep the premises in compliance with any "laws, ordinances or regulations of any governmental authority having jurisdiction." Wendell Renfro claimed to be a third-party beneficiary of that contract and to have been injured as a proximate result of its breach by Georgia Power and its agent, Ledbetter.
After the Renfros presented their evidence, the trial court granted Georgia Power and Ledbetter's motions for a directed verdict. The Renfros appeal the judgment based on the directed verdict, claiming that they presented substantial evidence of their claims. We disagree with them, and we affirm the judgment of the trial court.
A motion for a directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v.Williams, 570 So.2d 589 (Ala. 1990); John R. Crowley Bros.,Inc. v. Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman and S. Guin, Alabama Civil Procedure § 8.37 (1990). In order to withstand a motion for a directed *Page 411 
verdict, the nonmovant must have presented sufficient evidence to allow submission of the case or issue to the factfinder for a resolution. Hoffman Guin, supra, at § 8.37. For actions filed after June 11, 1987, the standard of review applicable to a motion for directed verdict is the "substantial evidence rule." See, § 12-21-12(a), Ala. Code 1975; Koch v. State FarmFire Cas. Co., 565 So.2d 226, 228 (Ala. 1990). This Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would be free to draw. Williams v.Allstate Ins. Co., 591 So.2d 38 (Ala. 1991).
 II.
The Renfros claim that Georgia Power and its agent Ledbetter had the duty to provide ORBA employees with a safe workplace. First, the Renfros argue that Georgia Power and Ledbetter exercised such extensive control over the operation of the mine that a master/servant relationship was created between Georgia Power and ORBA. Second, they argue that Georgia Power, through its contract with ORBA, retained control over the manner in which ORBA performed its work.
In order to prove negligence or wantonness, the Renfros must prove that Georgia Power and Ledbetter owed Wendell Renfro a duty, that they breached that duty, and that he was injured as a result of that breach. Kendrick v. Alabama Power Co.,601 So.2d 912 (Ala. 1992) citing Alabama Power Co. v. Smith,409 So.2d 760 (Ala. 1982).
 "It is well settled in Alabama that the owner of premises, such as [Georgia Power], generally does not owe a duty to the employees of an independent contractor with respect to work conditions. See Weeks v. Alabama Electric Cooperative, Inc., 419 So.2d 1381 (Ala. 1982); Pate v. United States Steel Corp., 393 So.2d 992 (Ala. 1981); Hughes v. Hughes, 367 So.2d 1384 (Ala. 1979). There are exceptions, of course. As was stated in Weeks:
 " 'The general rule does not apply, however, if the premises owner retains or reserves the right to control the manner in which the independent contractor performs its work.' Thompson v. City of Bayou La Batre, 399 So.2d [292,] . . . 294 (Ala. 1981); Hughes v. Hughes, 367 So.2d at 1386. 'When the right of control is reserved, the relationship changes from one of premises owner and independent contractor to that of master and servant.' [Thompson,] 399 So.2d at 294.
 " 'A master-servant relationship is not created, however, when the owner merely retains the right to supervise or inspect work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications, and retains the right to stop work that is not properly done. Pate v. United States Steel Corp., 393 So.2d at 995.'
 "Weeks, 419 So.2d at 1383. (Emphasis added.) See also, Alabama Power Co. v. Smith, 409 So.2d at 764."
Kendrick, 601 So.2d at 914. See Terrell, 567 So.2d at 291-92.
The Renfros argue that they presented substantial evidence that Georgia Power and Ledbetter, by their actions in the mine, retained control of the manner in which ORBA performed its work and, thus, created a master/servant relationship. Georgia Power and Ledbetter, however, argue that the testimony proved only that they were carrying out their responsibilities under the contract by overseeing the facility's compliance with the "laws, ordinances or regulations of any governmental authority having jurisdiction," as well as overseeing the quality and quantity of the coal produced by ORBA, and they argue that carrying out these responsibilities did not create a master/servant relationship.
The facts of this case regarding a master/servant relationship are similar to those in Kendrick. In Kendrick, an employee of Drummond Coal Company ("Drummond"), was injured while performing his job duties. He sued Alabama Power Company ("APCo") and a company hired *Page 412 
by APCo to oversee certain aspects of the mining operation, alleging negligence and/or wantonness. The plaintiff claimed that APCo exercised such extensive control over the operation of the mine that a "master/servant relationship was created between APCo and Drummond so that APCo owed [the employee] . . . a duty to provide him with a safe work place." APCo argued, however, that it was merely overseeing the quality and the quantity of the coal produced to ensure compliance with the terms of the agreement. This Court held that the trial court properly entered a summary judgment on behalf of APCo and its overseer because the plaintiff "failed to submit substantial evidence that [the defendants] owed a duty to Drummond's employees."
In the present case, Georgia Power elicited testimony from the Renfros' witnesses that ORBA, alone, supervised the day-to-day operations of the facility and that all directions concerning its operation were given by ORBA employees. The Renfros' witnesses testified that ORBA also had an extensive safety program in effect for its employees and that neither Ledbetter nor other agents of Georgia Power ever attended these meetings. The Renfros' only evidence that Georgia Power, by its actions or the actions of its agent, asserted any control over the operation of the mine, was evidence that periodically Ledbetter would inspect the mine to make sure that it was complying with OSHA regulations.
This Court has recognized that an owner may retain the right to supervise and inspect the work of an independent contractor without creating a master/servant relationship. We do not believe this retention of the right to inspect for OSHA compliance was ever intended to create a duty on Georgia Power to provide Renfro with a safe place to work. SeeKendrick, 601 So.2d at 914. After reviewing the evidence and the argument presented by the Renfros, we conclude that the Renfros failed to present substantial evidence that either Georgia Power or Ledbetter exercised enough control over the manner or method by which ORBA and its employees mined coal to create a master/servant relationship.
The Renfros also argue that they presented substantial evidence that Georgia Power, through its contract with ORBA, retained control over the manner in which ORBA performed its work. The Renfros refer to this Court's recent opinion inTerrell v. Georgia Power Co., 567 So.2d 290 (Ala. 1990), wherein this Court held, in a case involving the same contract between ORBA and Georgia Power that is the subject matter of this suit, that Georgia Power did indeed reserve a right to control the manner in which ORBA carried out its work, and, thus, had a duty to maintain a safe workplace.
In Terrell, Georgia Power and Ledbetter were sued by an injured ORBA employee who claimed that Georgia Power had a duty to provide ORBA employees with a safe place to work because Georgia Power, through its contract with ORBA — the same contract involved in this case — retained control over the manner in which ORBA performed its work. This Court reversed the summary judgment entered on behalf of Georgia Power and Ledbetter, holding that the plaintiff had proven, by substantial evidence, that the conditions in the facility violated some OSHA regulations and that "under the contract Georgia Power had the responsibility to make modifications required to bring the facility into compliance with 'laws, ordinances or regulations of any governmental authority.' "Terrell, 567 So.2d at 294.
The Renfros claimed that Wendell Renfro's injury resulted from Georgia Power's failure to modify the lighting in the tunnel where the accident occurred, its failure to construct and maintain a safe passageway, and its failure to provide a system or process to effectively and routinely clean the catwalk of the tunnel, all of which, the Renfros say, were necessary to bring the facility into compliance with OSHA regulations.
Georgia Power's motion for a directed verdict was based on the ground that there was no substantial evidence of OSHA violations and that even if the court found substantial *Page 413 
evidence of violations, then according to the contract it was ORBA's duty to perform any work necessary to keep the facility in compliance with OSHA rules and regulations and that Georgia Power was required only to pay for these modifications or additions when made.
As previously mentioned, the contract in issue has already been interpreted by this Court, in Terrell, as creating a duty on Georgia Power to make any additions or modifications required to bring the facility into compliance with any relevant rules and regulations. We must determine, therefore, whether the Renfros submitted substantial evidence that the facility did not comply with OSHA regulations. After reviewing the record, this Court holds that they did not.
The Renfros claimed that the facility did not comply with existing OSHA regulations, arguing that the tunnel did not contain a safety railing and toeboards as required by29 C.F.R. § 1910.23 and that the tunnel was inadequately lighted. The Renfros called an expert on OSHA regulations, Robert Willis, who testified that the facility indeed did violate OSHA regulations. On cross-examination, however, Willis admitted that the regulations on which he was relying were not applicable to this particular type of tunnel or even to this particular type of facility.[2] Willis stated the following on cross-examination:
 "Q So the truth of the matter is, is it not, Mr. Willis, that there is no provision in the standard or in the federal regulation that deals with this type of tunnel that we have in this case? That's true, isn't it, sir?
 "A It does not spell out the exact tunnel that you have.
"Q All right.
"A But —
 "Q So is the answer to my question, 'yes, that's true'?
"A I just said that. Yes, sir.
 "Q Okay. Thank you sir. Now, what you've got here and what you've testified to these ladies and gentlemen of the jury and what I've marked as Defendant's Exhibit 1 is what is in your opinion the closest thing you can find to what we have in this situation, correct?
"A That's correct.
 "Q And what this deals with, the area or activity involved, the heading is 'Power Plants,' correct?
"A Correct.
"Q And this is not a power plant, is it, sir?
 "A It's — it's a part of a very large power plant. It's just not on the same —
 "Q Well, this is a coal handling and transportation facility, is it not, sir?
"A Yes, sir.
 "Q There's a big difference between a coal handling transportation facility and a power plant; isn't that right, sir?
"A From the main power plant, yes, sir.
 "Q And then it also — the thing you're relying on is further broken down under the heading of 'Control Rooms,' is it not, or am I reading that wrong?
 "A I don't know[. I don't] see [a section on] control rooms.
"Q Okay. I may be reading that wrong.
"A Yeah. There it is.
"Q And this is not a control room, is it, sir?
 "A This is not a control room as we normally would think of a control room.
 "Q And then on over under those same — that same breakdown of power plants and control rooms, it talks about tunnels?
"A Correct.
 "Q And that's the regulation that you're relying on; is that correct?
 "A That's the regulation that I've quoted to you, because, as you state, it was the nearest thing that I could find to the condition that we had. . . ."
We conclude, as did the trial court, that the plaintiffs presented no substantial evidence that the defendants breached any duty owed them. Therefore, the trial court *Page 414 
properly directed a verdict in favor of the defendants.
 III.
Another basis of this suit was the Renfros' claim that Georgia Power, and Ledbetter as its agent, breached Georgia Power's contract with ORBA to make additions or modifications to the facility needed to keep the facility in compliance with any laws, ordinances, or regulations; the Renfros claim that Wendell Renfro was a third-party beneficiary of the contract and that he was injured by the defendant's failure to perform the contractual obligation. This Court has already determined that the Renfros failed to submit substantial evidence that any OSHA regulations were violated; it follows that the Renfros also failed to prove that the defendants breached any alleged contract made for Wendell Renfro's benefit.
For the foregoing reasons, the trial court properly directed the verdict in favor of Georgia Power and Ledbetter. The judgment based on that verdict is affirmed.
AFFIRMED.
ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] The relevant terms of the contract between ORBA and Georgia Power can be found in Terrell v. Georgia Power Co.,567 So.2d 290 (Ala. 1990).
[2] The regulation at 29 C.F.R. § 1910.23 applies to elevated areas, and this case does not deal with an elevated area. The regulation, therefore, would not apply to this case.