788 So.2d 146 (2000)
CITY OF ORANGE BEACH et al.
v.
Richard DUGGAN.
1990682.
Supreme Court of Alabama.
December 15, 2000.
*147 Lawrence M. Wettermark and Andrew J. Rutens of Galloway, Smith, Wettermark & Everest, Mobile, for appellants.
Oliver J. Latour, Jr., Foley, for appellee.
T. Randall Lyons and Stacy A. Linn of Nix, Holtsford, Gilliland, Lyons & Higgins, P.C., Montgomery, for amicus curiae Alabama Municipal Insurance Corporation.
SEE, Justice.
The defendantsthe City of Orange Beach ("Orange Beach"); the Orange Beach Personnel Board (the "Board"); Orange Beach's director of personnel; and the chairman and four members of the Boardpetitioned this Court, pursuant to Rule 5, Ala. R.App. P., for permission to appeal from an interlocutory order of the Baldwin Circuit Court. The interlocutory order denied the defendants' motion for a summary judgment on the plaintiff Richard Duggan's claim that he was deprived of procedural due process, in violation of the Constitution of Alabama of 1901. This case involves the termination of Duggan's employment as a police officer with Orange Beach. We permitted the appeal. We reverse and remand.

I.
For the limited purpose of this appeal, we consider as correct the factual statements in the trial court's order denying the defendants' motion for summary judgment.[1] On April 29, 1997, Duggan, while off duty, was driving in his automobile when he heard on his police radio that the police were looking for a DUI suspect. Shortly thereafter, Duggan was forced to swerve out of the path of an oncoming car that matched the description of the DUI suspect's car. Duggan began pursuit, and he, Sgt. Lyle Dodd, and another Orange Beach police officer ultimately stopped the suspect's car. During the arrest, animal *148 control officer Sean Lacey and Sgt. Gina Long reported to the scene to assist the arresting officers. Officer Lacey said he saw Duggan take a $100 bill out of the suspect's purse. Officer Lacey notified Sgt. Long, who ordered Duggan to empty his pockets. Duggan refused. Both Sgt. Dodd and Officer Lacey said they saw Duggan then take money from his pocket and drop it into the suspect's car. Police Chief Robert Vinson was called to the scene; he ordered all the officers present to submit written statements. Chief Vinson then ordered Maj. Gerald Poe, the officer in charge of internal police investigations for Orange Beach, to investigate.
On May 9, 1997, at the conclusion of his investigation, Maj. Poe reported to Chief Vinson that his findings substantiated the allegations made against Duggan and he recommended that disciplinary action should be taken. That same day, Maj. Poe served Duggan with a notice of possible major disciplinary action and a copy of the written internal investigation notification. The internal investigation notification stated the charges against Duggan and stated the date set for a pretermination hearing.
On May 15, 1997, Duggan was afforded a pretermination hearing before Chief Vinson. At no time during this hearing did Duggan or his attorney object to Chief Vinson's conducting the hearing. Duggan was notified later that day of Chief Vinson's decision to terminate him. Duggan appealed to the Board on May 20, 1997. On June 10, 1997, the Board held a prehearing conference, at which scheduling issues and witness information were discussed. At the end of the conference, the director of personnel for Orange Beach provided Duggan a notebook containing copies of the written statements of Duggan, Sgt. Dodd, Officer Lacey, and Sgt. Long; a forensic report; a radio log; the internal investigation report; a "money trail"; and a property receipt and invoice. Copies of the notebook were also provided to Chief Vinson and to members of the Board. Duggan contends that he did not know that this notebook was being provided to the Board members and that supplying this information to the Board before the hearing violated his procedural-due-process rights.
On June 23, 1997, the Board held its hearing on Duggan's appeal. For the first time, Duggan contended that Chief Vinson was biased against him and objected to the Board's being provided the notebooks. He requested that the Board members recuse themselves and that a new Board be constituted. The Board denied the objection, and it upheld Duggan's termination.
Duggan sued in the Circuit Court of Baldwin County, seeking damages under 42 U.S.C. § 1983 for alleged violations of due process under the United States Constitution and seeking a common-law appeal and certiorari review of the termination order. The defendants removed the case to the United States District Court for the Southern District of Alabama and moved there for a summary judgment as to the federal-law procedural-due-process claims and further requested the federal court to conduct the certiorari review based upon the written transcript of the Board hearing. The federal court entered a summary judgment in favor of the defendants as to all of the § 1983 claims and remanded the case for the Circuit Court of Baldwin County to decide all state-law issues. The federal court relied on McKinney v. Pate, 20 F.3d 1550, 1564 (11th Cir.1994), wherein the United States Court of Appeals for the Eleventh Circuit held that in an employment-termination case, "the presence of a satisfactory state [postdeprivation] remedy" through the appellate process provides all the "procedural due process" that is required, and, thus, that having a biased *149 decision-maker in a pretermination hearing does not violate the Due Process Clause of the Constitution of the United States.
On remand of the case to the circuit court, Duggan amended his complaint to add causes of action based on alleged violations of due process under the Alabama Constitution of 1901. The defendants moved for a summary judgment on Duggan's state-law claims. The circuit court denied the defendants' motion for summary judgment as to the state-law due-process claims, relying on Stallworth v. City of Evergreen, 680 So.2d 229 (Ala. 1996). In Stallworth, this Court rejected the reasoning in McKinney and held that where a pretermination hearing officer is biased against a terminated governmental employee, the employee is denied federal procedural due process. Id. at 235. In its order denying the defendants' motion for summary judgment, the trial court stated that it would "assume that [this Court] would apply the same [Stallworth] rationale to the Alabama Due Process Clause as was applied to the federal clause." The trial court certified its order for permissive appeal to this Court, under Rule 5, Ala. R.App. P.
In its statement of the summary-judgment issues, the trial court stated that Duggan alleges due-process violations "under the Constitution of the State of Alabama, Article I, Section 6."[2] We granted the defendants' petition for permission to appeal the interlocutory order; and we now reverse the circuit court's order denying the defendants' motion for a summary judgment.

II.
When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala.1992).

III.
In support of their motion for summary judgment, the defendants argue that this Court's holding in Stallworth, 680 So.2d at 235, is contrary to the federal caselaw interpretation of the federal Due Process Clause and should be overruled. They argue that this Court should not develop a separate body of decisional law holding that the procedural due-process protections of the Constitution of Alabama of 1901 are different from those afforded under the Fourteenth Amendment to the *150 United States Constitution. Therefore, they argue, this Court should adopt the holding in McKinney, 20 F.3d 1550, and overrule our prior holding in Stallworth, 680 So.2d 229.
This case is distinguishable from Stallworth. In Stallworth, the plaintiff government employee alleged that his due-process rights guaranteed by the United States Constitution and the Alabama Constitution had been violated because a biased decision-maker had participated in his pretermination hearing. 680 So.2d at 232. At the pretermination hearing, the government employee objected to the pretermination officer. In this case, Duggan waited to object until he had appealed to the Board. Also, in Stallworth the pretermination hearing officer was called as a witness at the pretermination hearing against the government employee and at the subsequent appellate hearing. In this case, Duggan's only allegations of bias against Chief Vinson are that he helped prepare the charges against Duggan, ordered the investigation, and helped one of the officers draft a statement against Duggan. Chief Vinson made no allegations himself, and he was not a witness against Duggan. Most important, in Stallworth this Court declined to follow the holding of the Eleventh Circuit in McKinney, 20 F.3d at 1564that a biased decision-maker's participation in a pretermination hearing does not violate the Due Process Clause of the Constitution of the United States. Instead, this Court held that federal due-process law requires that an employment pretermination hearing be conducted by an unbiased and impartial decision-maker. Stallworth, 680 So.2d at 235. In this case, the United States district court, relying on McKinney, has already held, in a final and unappealed judgment, that bias on the part of the pretermination decision-maker, Chief Vinson, was not a violation of federal due-process requirements. The single issue before this Court is whether permitting a biased decision-maker to participate in a pretermination hearing for a government employee violates the procedural due-process rights of that employee guaranteed under the Constitution of Alabama of 1901.

IV.
The defendants argue that Duggan's procedural-due-process rights under Art. I, § 13, Ala. Const.1901, were not violated by a biased decision-maker conducting Duggan's pretermination hearing. They assert that Ala.Code 1975, § 11-43-160, requires that the pretermination decision to remove an officer of a city or town be made by the appointing officer. Therefore, they argue, requiring an unbiased pretermination hearing officer would make it impossible for them to follow this statutory mandate. The chief of police is the appointing officer in this case and, therefore, must be the pretermination hearing officer. Thus, we must decide whether Ala.Code 1975, § 11-43-160, denies procedural due-process guaranteed under the Alabama Constitution of 1901.
In addressing the alleged constitutional infirmities of a statute, we are conscious of the well-established rule requiring courts to defer to the policy-making authority of the Legislature, by rejecting constitutional challenges to statutes, where it is possible to do so. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945), this Court stated:
"Uniformly, the courts recognize that [the] power [to strike down a statute as unconstitutional] is a delicate one, and to be used with great caution.... It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with *151 every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.
"Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances of abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom."
(Citations omitted.) For the following reasons, we do not find it "clear beyond reasonable doubt" that Ala.Code 1975, § 11-43-160, violates procedural-due-process requirements of the Alabama Constitution of 1901.
"[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action." Brown's Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala.1992); see also Carter v. City of Haleyville, 669 So.2d 812 (Ala.1995). The United States Supreme Court has held that a procedural-due-process violation that is potentially actionable is not complete when the deprivation takes place; such a violation does not occur "unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).[3] In Zinermon, the Supreme Court noted that "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." 494 U.S. at 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). In this case, the deprivation takes place at the time of the defective pretermination hearing. According to the principle stated in Zinermon, a procedural-due-process violation was not complete at that time, because the Board provided a full evidentiary posttermination hearing. Therefore, we conclude that the Board ultimately provided the necessary procedural due process and remedied any *152 deficiencies in Duggan's pretermination hearing.
In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court of the United States recognized the difference between a posttermination hearing and a pretermination hearing. In Loudermill, terminated school-district employees sued the Cleveland Board of Education, alleging that their federal procedural-due-process rights had been violated because they were not provided an opportunity to respond to the charges against them. The Supreme Court held that tenured government employees almost always must be afforded at least a limited pretermination hearing before they can be constitutionally terminated. 470 U.S. at 542-43, 105 S.Ct. 1487. The Supreme Court, however, held that the pretermination hearing need not be elaborate and need not be a full evidentiary hearing. Id. at 545, 105 S.Ct. 1487. The Supreme Court reasoned that the purpose of a pretermination hearing is not to "definitively resolve the propriety of the discharge," but, rather, to "be an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46, 105 S.Ct. 1487. The Supreme Court also noted that under state law the terminated government employee was later entitled to a full and adequate administrative posttermination hearing and judicial review. Id. at 545, 105 S.Ct. 1487. Therefore, the Supreme Court concluded that under federal procedural-due-process law all that is required in a pretermination hearing is "oral or written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity [for the employee] to present his side of the story." Id. at 546, 105 S.Ct. 1487. The Supreme Court then stated that "[t]o require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id. In this case, Duggan was served with notice of the charges against him and was given the opportunity to present his side of the story to Chief Vinson at the pretermination hearing.
Even assuming that Chief Vinson was biased in that he was familiar with the case and was involved in the investigation,[4] Duggan is entitled only to procedural due process at some "meaningful time and in a meaningful manner," Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), an employee was dismissed from his position in the Office of Economic Opportunity ("OEO") for allegedly having made recklessly false and defamatory statements about other OEO employees. The employee asserted his termination was unlawful because he had a right to an evidentiary hearing before an impartial hearing officer before he could be terminated from his employment. Id. at 137, 94 S.Ct. 1633. In a plurality opinion, the Supreme Court rejected this procedural-due-process claim. Id. at 163, 94 S.Ct. 1633. Justice Powell, joined by Justice Blackmun, concurred in part and concurred in the result in part, stating:
"In most cases, the employee's supervisor is the official best informed about *153 the `cause' for termination. If disqualification is required on the ground that the responsible supervisor could not be wholly impartial, the removal procedure would become increasingly complex. In effect, a `mini-trial' would be necessary to educate the impartial decisionmaker as to the basis for termination."
Arnett, 416 U.S. at 170-71 n. 5, 94 S.Ct. 1633.
In Loudermill, the Supreme Court recognized that determining what procedural process is due requires a balancing of the parties' competing interests. 470 U.S. at 542-43, 105 S.Ct. 1487. The Supreme Court stated that these interests are "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." 470 U.S. at 542-43, 105 S.Ct. 1487. Because a full evidentiary hearing is not required at the pretermination level, id. at 545, 105 S.Ct. 1487, it would be impractical to require a person unfamiliar with the subject matter of the allegations to conduct the pretermination hearing. We conclude that "the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens" of conducting a "mini-trial" to educate an impartial decision-maker outweighs the private interest in "retaining employment" and "the risk of an erroneous termination." Loudermill, 470 U.S. at 542-43, 105 S.Ct. 1487.
Upon close analysis of Loudermill and the other United States Supreme Court cases, we conclude that because a pretermination hearing functions merely as an "initial check against mistaken decisions" and a posttermination hearing provides an extensive adjudicatory hearing adequately addressing all of the employee's concerns, having a pretermination hearing officer who is familiar with the case and who was involved in the investigation does not deny the procedural due process guaranteed under the Constitution of Alabama of 1901.[5]
We conclude that "the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens" of conducting a "mini-trial" to educate an impartial decision-maker outweighs the private interest in "retaining employment" and "the risk of an erroneous termination." Loudermill, 470 U.S. at 542-43, 105 S.Ct. 1487.

V.
Accordingly, we conclude that the procedural due process guaranteed under the Constitution of Alabama of 1901 does not require an entirely neutral decision-maker in an employment pretermination hearing for a government employee. Thus, it is not "clear beyond reasonable doubt" that Ala.Code 1975 § 11-43-160, denies the procedural due process guaranteed under the Alabama Constitution of 1901. Therefore, we reverse the circuit court's order denying the defendants' motion for summary judgment, and we remand for further proceedings.
REVERSED AND REMANDED.
HOOPER, C.J., and LYONS, BROWN, and JOHNSTONE, JJ., concur.
*154 COOK, J., concurs in the result.
MADDOX, HOUSTON, and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (concurring).
I concur entirely in the main opinion. I write only to note a reason why allowing a person who is the moving force, or one of the moving forces, behind a proposed dismissal to conduct the pre-termination hearing does not impede fairness but promotes it and does not increase the risk of wrongful termination but decreases the risk. Such a procedure allows the employee to hear the grounds for dismissal directly from the superior who thinks the grounds for dismissal exist. If the superior's apprehension that the grounds for dismissal exist is a mistake, such a procedure allows the employee an opportunity directly to disabuse the superior of the mistake and to persuade the superior to reconsider the effort to terminate the employee. In other words, such a system allows direct, unfiltered, undiluted communication and response between the two people most involved in the proposed dismissal. The commonsense benefits of this procedure justify the constitutional doctrine allowing the procedure.
HOUSTON, Justice (dissenting).
The United States District Court for the Southern District of Alabama has ruled in a final, unappealed judgment that bias on the part of the pretermination decision-maker did not constitute a denial of the due process guaranteed by the United States Constitution because there existed adequate post-deprivation remedies in the form of a Personnel Board review and ultimately a certiorari or common-law review by an Alabama court. That legal holding is the law of the case. Blumberg v. Touche, Ross & Co., 514 So.2d 922 (Ala. 1987). Therefore, that takes this Court's holding in Stallworth v. City of Evergreen, 680 So.2d 229 (Ala.1996), out of play in this case. Out of the great respect that I have for Senior District Judge W.B. Hand, the judge who ruled in this case; and after studying an article entitled "Alabama Supreme Court Contravenes United States Supreme Court Due Process Jurisdiction: Stallworth v. City of Evergreen," 49 Ala. L.Rev. 1081 (Spring 1998), I will consider overruling Stallworth, which I wrote, when the issue presented in Stallworth comes before this Court again.
In this case, we are dealing with due process as guaranteed by the Constitution of Alabama of 1901 (not by the United States Constitution).
I cannot accept the majority's conclusion that "`the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens' of conducting a `mini-trial' to educate an impartial decision-maker outweighs the private interest in `retaining employment' and `the risk of an erroneous termination,'" 788 So.2d at 153, because the Constitution of Alabama of 1901 provides, in Art. I:
"That the great, general, and essential principles of liberty and free government may be recognized and established, we declare:
". . . .
"Sec. 35. Objective of government.
"That the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when the government assumes other functions it is usurpation and oppression."
(Emphasis added.)
Clearly, Officer Duggan has a "property" right in his job, which the majority of this Court is willing to have taken away from him by a possibly biased hearing *155 officer because to permit that is expeditious and provides a means of avoiding administrative burdens. This outweighs Duggan's right to retain employment and his right not to be deprived of his employment by an erroneous termination? To me, § 35 of the Constitution is made of sterner stuff.
MADDOX, J., concurs.
NOTES
[1] The trial court adopted the facts stated in the order of the United States District Court for the Southern District of Alabama, to which court this case had been removed. Both courts were careful to point out that in stating the facts neither court was determining the truth or falsity of the parties' allegations. Similarly, we emphasize that we are not making findings of fact and express no opinion as to the truth or falsity of the parties' allegations.
[2] Article I, § 6, Ala. Const.1901, provides rights in criminal prosecutions. This case is a civil action; therefore, § 6 does not apply. Due-process rights in civil cases are provided by Art. I, § 13.
[3] The Supreme Court of the United States has recognized, in another context, the adequacy of appellate review in safeguarding due-process rights of a party. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The Supreme Court held that "the Alabama Supreme Court['s] ... additional check on the jury's or trial court's discretion" in awarding punitive damages provides a sufficient safeguard to a defendant's rights to due process. Id. at 20-21, 24, 111 S.Ct. 1032. The appellate review of an erroneous punitive-damages award is analogous to the Board's review of an employee's termination after a defective pretermination hearing. Both the defendant and the employee are being "deprived" at a procedurally deficient proceeding, but both are ultimately provided the necessary procedural due process at a subsequent review of that proceeding.
[4] Because we must view the evidence in the light most favorable to the nonmovant, Renfro, 604 So.2d at 408, 411, we assume that Chief Vinson was a biased hearing officer. We note, however, that Duggan's only allegations suggesting a bias of Chief Vinson are allegations that he helped prepare the charges against Duggan, ordered the investigation, and helped one of the officers draft a statement against Duggan.
[5] We note that our conclusion is consistent with that of the majority of federal courts of appeals that have addressed this issue as a matter of federal due process. See McDaniels v. Flick, 59 F.3d 446 (3d Cir.1995); Walker v. City of Berkeley, 951 F.2d 182 (9th Cir. 1991); Duchesne v. Williams, 849 F.2d 1004 (6th Cir.1988); Garraghty v. Jordan, 830 F.2d 1295 (4th Cir.1987); Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir.1987); DeSarno v. Department of Commerce, 761 F.2d 657 (Fed. Cir.1985).